**KOBE, Inc., et al. v. DEMPSEY PUMP CO. et al.**

Civ. No. 2350.

United States District Court
N. D. Oklahoma.

March 23, 1951.

Harris, Kiech, Foster & Harris, Los Angeles, Cal., Martin, Logan, Finney & Stanton, Tulsa, Okl., for plaintiffs.

C. M. McKnight, Williams, Boesche & McDermott, and Anne Moroney, all of Tulsa, Okl., Stevens, Davis, Miller & Mosher, Washington, D. C., for defendants.

SAVAGE, Chief Judge.

### Findings of Fact

From the evidence adduced at the trial of the above entitled cause, the Court finds the following facts:

### Jurisdiction

1.

Each Plaintiff is a corporation of the State of California. Defendant Oscar E. Dempsey is a citizen and resident of Oklahoma. Defendant Dempsey Pump Company is a corporation of the State of Oklahoma. Defendant Specialty Sales and Service, Inc. is a corporation of the State of Oklahoma. Defendant M. L. Walraven, Jr. is a citizen and resident of Oklahoma.

2.

The first cause of action asserted by Plaintiffs arises under the laws of the United States relating to patents and claims for infringement thereof; and the

second cause of action asserted by Plaintiffs is wholly between the citizens of different states in which the amount in controversy exceeds $3,000.00 exclusive of interest and costs.

3.

The several counterclaims of the Defendants Dempsey Pump Company and Specialty Sales and Service, Inc. arise out of the transaction or transactions which are the subject matter of the causes of action asserted by Plaintiffs; and said counterclaims further arise under the laws of the United States relating to trusts, monopolies and restraints of trade, and to declaratory judgments; and said counterclaims further are controversies wholly between citizens of different states in each of which is involved a sum or value in excess of $3,000.00 exclusive of interest and costs.

### Unfair Competition

4.

The Defendant Dempsey Pump Company is not the alter ego of the Defendant Oscar E. Dempsey, and the latter did not exercise such domination and control of the said corporation that it was the mere agent or instrumentality of the said individual Defendant.

5.

Plaintiffs have failed to establish the averments of their second claim for relief, respecting unfair competition by the Defendants, and the issues upon said claim are found generally against the Plaintiffs and in favor of the Defendants. Specifically, the Court finds that Plaintiffs' evidence tendered in support of its averment that the Defendant Walraven and others entered an association with the Defendants Dempsey Pump Company and Oscar E. Dempsey in violation of a relation of trust and confidence with the Plaintiff Kobe, Inc. is insufficient to prove the said averment, and the Court finds no violation of any such relation to have occurred. The Court further finds that none of the Defendants at any time have hired away any employee of the Plaintiff Kobe, Inc., but that employments by any of the Defendants of former employees of Kobe, Inc. occurred only after severance of the employment relation by such employee for causes other than inducement of the Defendants.

### Validity and Infringement of Plaintiffs' Patents

6.

Plaintiff Kobe, Inc. is the owner of United States Letters Patent No. 1,907,951, No. 2,081,220, No. 2,473,864, and No. 2,081,223 and is a licensee under United States Letters Patent No. 1,907,947.

7.

Plaintiff Alta Vista Hydraulic Company, Ltd. is the owner of United States Letters Patent No. 1,907,947.

8.

Only claims 7, 8, 9, 10, 19, and 20 of Letters Patent No. 1,907,947 are here in suit. All of such claims in suit relate to a hydraulically operated pumping mechanism for use in a bored well. Such hydraulic pump is designed to be set at or near the bottom of an oil well, and is actuated by the delivery thereto of liquid power fluid through suitable tubing from the surface of the ground. All of such claims in suit are combination claims covering such mechanism which includes a differential-area engine piston, and by that is meant an engine piston having a small area continuously exposed to a supply of liquid at relatively high pressure, and a larger area alternately exposed to high liquid pressure and lower liquid pressure to reciprocate the piston. By the use of such a construction in a hydraulic pump, a number of advantages were obtained, i. e., simplicity of the parts of the mechanism and a better utilization of the small well space available for such a pump, a slow pumping stroke and a fast return stroke was obtained, and the engine piston assembly was positively actuated on both of its strokes. The patentee by such construction obtained an increased pumping rate over that obtained by his earlier patented hydraulic pump designs exemplified by Defendants' Exhibits 9 and 19. Claims 19 and 20 of such patent in suit additionally

provide for the application of clean power oil to a medial portion of the piston assembly to keep the piston assembly clean, and was an added advantage as it reduced wear on the piston.

### 9.

The inventions defined by the claims in suit of Letters Patent No. 1,907,947 constituted substantial contributions to the hydraulic pump art as it existed at the date thereof and were for substantial improvements in such hydraulic pumps. Hydraulic pumps embodying such inventions have been manufactured and sold by Licensees under said Letters Patent in suit, and have enjoyed a limited commercial success to the extent of seven pumps sold. Starting in the year 1937, Plaintiff Kobe, Inc. and its predecessors have built two single acting pumps of types similar to that disclosed in said Letters Patent No. 1,907,947 and have continuously tested such pumps. Also licensed under said Letters Patent No. 1,907,947 is National Supply Company, a stranger to this action, but it has never manufactured or sold any pumps under such license, and such license was acquired by said National Supply Company in settlement of an interference proceeding in the United States Patent Office. The predecessor of Plaintiff Kobe, Inc. first obtained a license under said Letters Patent and other patents in 1934, and they have paid royalties in substantial amounts under said license to Plaintiff Alta Vista Hydraulic Company, Ltd., as is shown by "Plaintiffs' Exhibit 6", but neither has ever sold any pump under such license.

### 10.

The combination defined by each of the claims in suit of Letters Patent No. 1,907,947 was novel in the art and embodied invention. None of the prior art patents relied upon by Defendants herein shows or suggests the inventions defined by any of such claims in suit. None of the prior art patents relied upon by Defendants herein shows a construction which is as nearly like the construction defined by such claims in suit as the prior patents which were considered by the United States Patent Office in connection with the application for Letters Patent No. 1,907,947. None of the claims in suit of Letters Patent No. 1,907,947 are anticipated by the Tucker Patent No. 1,614,765 and such claims in suit constitute invention over such Tucker patent. The presumption of validity attaching to the issuance of the patent in suit was strengthened by the proceeding had in the Patent Office upon the application for said Letters Patent in suit.

### 11.

Each of the claims in suit of Letters Patent No. 1,907,947, distinctly claims the invention.

### 12.

Defendants' pumps which are charged to infringe the Plaintiffs' Letters Patent No. 1,907,947 in suit are exemplified by Defendants' Exhibits 2 and 5. Each of Defendants' said pumps infringes each of the claims in suit of Letters Patent No. 1,907,947.

### 13.

Claims 1, 2, 3, 4 and 6 of United States Letters Patent No. 1,907,951 are here involved. They relate to the fluid locking of the pilot valve of a fluid-operated pump during the major portion of the travel of the piston assembly. In view of the prior art, no invention is defined by the claims in suit of United States Letters Patent No. 1,907,951. Employment of a fluid lock to the pilot valve in the device shown by Patent No. 1,907,951 was mere skill in the art, and not invention.

### 14.

Each of the claims in suit of Letters Patent No. 1,907,951 distinctly claims the invention.

### 15.

If valid, each of the claims in suit of Letters Patent No. 1,907,951 is infringed by the Defendants' pumps exemplified by Defendants' Exhibits 2 and 5.

### 16.

The only novel feature defined in Claim 34 of United States Letters Patent No. 2,081,220 in suit was the provisions of a main valve of the differential area type

in a fluid actuated well pump. The provision of a differential area type main valve in a fluid actuated well pump is not invention in view of the prior art.

### 17.

Defendants' construction is not similar to the structure described in Patent No. 2,081,220 and does not embody the elements specified in Claim 34 thereof, and does not infringe said patent in suit.

### 18.

Claim 34 in suit of Letters Patent No. 2,081,220 distinctly claims the invention.

### 19.

Claims 1, 4, 5, 6, 7, 8 and 9 of United States Letters Patent No. 2,081,223 are here involved. These claims, in various terms, define the use of dash pots to control the deceleration and acceleration of the motor piston of a fluid-actuated well pump. The claims of Patent No. 2,081,223 describe merely an obvious application of a well-known machine element which would be apparent to one skilled in the art, and the claims in suit do not define invention.

### 20.

The provision of such dash pots in the engine end of a hydraulic well pump of the type sold by Plaintiff Kobe, Inc. is desirable in all conditions of operation to prevent damage to the pump parts, and is essential in some cases. In excess of 3,900 of such pumps embodying the alleged invention of said Letters Patent No. 2,081,223 in suit have been sold by Plaintiff Kobe, Inc. and its predecessor over a period of years, and such pumps have enjoyed substantial commercial success. Earlier pumps sold by said predecessor without such dash pots would not operate satisfactorily and I find that said commercial success is largely attributable to the employment of the alleged invention of said Letters Patent No. 2,081,223.

### 21.

There is a departure in the Plaintiffs' commercial pump offered to the trade since 1935 from the structure disclosed in Patent No. 2,081,223, in that the commercial pump differs in the type of engine valve used, and the type of plunger used in the engine and pump cylinders, and also in the type of pilot valve used. However, the basic principle of the pump operation is substantially the same. After recognizing that the damage caused by piston elements hitting the ends of the cylinders in the first commercial pumps sold by Plaintiff Kobe could be remedied by using a dash pot, then the selection and design of a dash pot to meet that particular situation was not difficult. The dash pots used in Plaintiff Kobe, Inc. commercial pumps are made to specific clearances and tolerances.

### 22.

Defendants' pumps, exemplified by Defendants' Exhibits 2 and 5, each infringe each of the claims in suit of Letters Patent No. 2,081,223, if such claims are valid.

### 23.

Each of the claims in suit of Letters Patent No. 2,081,223 distinctly claims the invention.

### 24.

Claims 21, 22, 23, 24, 25 and 26 of United States Letters Patent No. 2,473,864 are here involved. The only novelty in these claims is a mounting of a differential area main valve in a differential area piston in a fluid-actuated well pump. Both differential area pistons and differential area valves were old before the time of this patent, and it involved no invention to mount a differential area valve in a differential area piston and none of said claims define an invention.

### 25.

Defendants' pumps, exemplified by Defendants' Exhibits 2 and 5, each infringe each of the claims in suit of Letters Patent No. 2,473,864, if such claims are valid.

### 26.

Each of the claims in suit of Letters Patent No. 2,473,864 distinctly claims the invention.

### 27.

As to Defendants' pumps exemplified by Defendants' Exhibit 2, Defendant Dempsey

Pump Company has manufactured, used, and sold such pumps, Defendant Oscar E. Dempsey individually manufactured and used such pumps prior to the formation of Defendant Dempsey Pump Company in February, 1948, and has individually used such pumps since such date, and Defendant Specialty Sales and Service, Inc. has sold said pumps. As to Defendants' pumps exemplified by Defendants' Exhibit 5, Defendant Dempsey Pump Company has manufactured, used and sold, and Defendant Specialty Sales & Service, Inc. has sold, such pumps during the pendency of this action.

### Misuse of Patents and Violation of the Antitrust Laws

#### 28.

Plaintiff Kobe, Inc., a California corporation, was incorporated in 1945 by Dresser Industries, Inc., a Pennsylvania corporation, (hereinafter referred to as "Dresser Industries"), and Plaintiff Kobe, Inc. is and at all times has been a wholly owned subsidiary of Dresser Industries. An earlier California corporation also named Kobe, Inc. and later Kobe Company was incorporated in 1923 (hereinafter referred to as "Old Kobe") and was dissolved in 1945 pursuant to Defendants' Exhibit 34. Prior to 1945, Old Kobe owned one-half of the issued capital stock of Roko Corpartion, a Nevada corporation (hereinafter referred to as "Roko"), incorporated in 1933. Rodless Pump Company, a Nevada corporation (hereinafter referred to as "Rodless"), at the end of 1944 owned the other one-half of the issued capital stock of Roko. At the end of 1944, Roko owned or had licenses under about 83 patents relating to fluid-operated pumps for oil wells and related equipment, the numbers of which are set forth on the back of Plaintiffs' Exhibit 3, which include Patents Nos. 1,907,947, 1,907,951, 2,081,220 and No. 2,081,223 here in suit. At the end of 1944, Old Kobe also owned a going business for the manufacture and sale of hydraulic pumps for oil wells and physical assets incidental thereto. Upon December 18, 1944, Dresser Industries entered into an agreement with Old Kobe, entitled "Plan of Reorganization of Kobe, Inc." by the terms of which Dresser Industries agreed to aquire from Old Kobe all of its assets, including its stock in Roko, and Dresser Industries agreed to issue its stock to Old Kobe and agreed to assume stated liabilities of Old Kobe, as shown by the contract contained in Defendants' Exhibit 34 in evidence. By the terms of the said contract, Old Kobe agreed to distribute the shares of Dresser stock received thereunder to its own shareholders in proportions fixed by the contract in consideration of the surrender and cancellation of its own stock, and thereafter to dissolve within 12 months. Also in December, 1944, Dresser Industries entered into an agreement with Rodless, exemplified by Defendants' Exhibit 32 in evidence, by the terms of which Dresser Industries agreed to acquire from Rodless all of its stock in Roko and Dresser Industries agreed to issue its stock to Rodless. Such agreements by Dresser Industries were performed in 1945 by all parties. As a result of such transactions in 1945 Dresser Industries acquired all of the assets of Old Kobe and all of the issued and outstanding stock of Roko. Dresser Industries early in 1945 then transferred all of the assets which it had acquired from Old Kobe to the Plaintiff Kobe, Inc., and caused Roko to transfer all of said patent rights to Plaintiff Kobe, Inc. by a formal assignment, exemplified by Defendants' Exhibit 33 in evidence. Thus, in 1945 Plaintiff Kobe, Inc. became the owner of all assets of Old Kobe and all patent rights of Roko. Patent No. 2,473,864 in suit was acquired by Plaintiff Kobe, Inc. directly from the inventor C. J. Coberly, its employe, and was not acquired from either Old Kobe or from Roko.

#### 29.

As of the time of trial of this action, the Plaintiff Kobe, Inc. owned or had rights under the 91 patents relating to well equipment enumerated on its catalogue, Plaintiffs' Exhibit 2, and in addition to Letters Patent No. 2,473,864 in suit, making a total of 92 of such patents. Of these 92 patents, some 69 pertain to fluid-operated lifting or pumping equipment (R. 1131–1132). Of such 69 patents, 32 were as-

signed to Plaintiff Kobe, Inc. or Old Kobe by employees of Kobe, Inc., and the remaining 37 patents were purchased from others or licenses from others taken thereunder. Prior to the filing of this action, some 25 of such patents under which Plaintiff Kobe, Inc. had rights had expired, and 14 more of such patents have expired during the pendency of this action.

### 30.

Hydraulically actuated deep well pumps of the type manufactured and offered for sale by Plaintiff Kobe, Inc. and Old Kobe, and of the type manufactured and offered for sale by Dempsey Pump Company, are in demand and are currently sold in interstate commerce. Commerce in deep well hydraulic pumps and related equipment extends and has extended into substantially all of the states of the United States in which oil is found and produced for more than ten years prior to the commencement of this action. During the period wherein Plaintiff Kobe, Inc. is subsequently found to have enjoyed a total monopoly of such commerce, its transactions in such pumps have extended from its factory at Huntington Park, California, into the several oil producing states of the United States, including California, Texas, Oklahoma, Kansas, New Mexico, Louisiana and others. The demand of oil producers for such hydraulic pumps exists generally throughout the several states within which petroleum is found and produced.

### 31.

Hydraulically actuated deep well pumps for oil wells are equipment for the lifting of oil from subterranean strata, having special attributes and advantages not possessed by other lifting equipment available to the oil industry.

### 32.

Such pumps are desirable to oil producers because of the said special attributes and advantages. They are peculiarly adaptable to the pumping of wells of great depth, and the pumping of wells which deviate substantially from vertical.

### 33.

Special skills are employed in the manufacture, sale and installation of such pumps. Throughout the period 1935 to date, such pumps have been manufactured, purchased, sold and installed as a separate item or article of commerce.

### 34.

The succession from Old Kobe to Plaintiff Kobe, Inc. did not work an interruption or other alteration of the commercial enterprise in hydraulic pumps, which was carried forward from one to the other. Except for changes in ownership the two corporations were in fact one continuous commercial enterprise. Coberly, president of Old Kobe, was retained as president and director of Plaintiff Kobe, Inc., but the remaining four directors were supplied from among officers of Dresser Industries. While acting for Plaintiff Kobe, Inc., Coberly was required to confer upon all important matters affecting it with officers of Dresser Industries before acting. The pending action was commenced only after consultation of Coberly and Dresser Industries personnel, and the business policies of the Plaintiff Kobe, Inc. have been intimately directed by the executives of Dresser Industries.

### 35.

From 1935 to the present date, Old Kobe, and successively Plaintiff Kobe, Inc. have enjoyed the total commerce among the several states of the United States in hydraulically actuated deep well pumps for oil wells. During such period Old Kobe and successively said Plaintiff have been the sole manufacturers and purveyors of such equipment to the oil industry, excepting only sales by the Defendants which are sought to be suppressed and enjoined by this action.

### 36.

In addition to the said sales of hydraulically actuated pumps, Old Kobe and successively Plaintiff Kobe, Inc. have enjoyed sales of related equipment installed upon producing leases in connection with hydraulic pumping installations, which additional sales were the normal commercial accompaniment of its exclusive offering

of the hydraulic pump itself. Plaintiffs' Exhibits 5 and 6 are a correct statement of the extent of said Plaintiffs' sales both of pumps and related equipment for the period indicated.

37.

Plaintiff Kobe, Inc. is the owner or licensee of more than ninety United States Letters Patent relating to hydraulically actuated deep well pumps and related equipment, under which it claims to manufacture the pump it now offers to the petroleum industry, and under some of which it claims the right to exclude the Defendants from the manufacture and sale of its product.

38.

Substantially all of said patents and licenses were acquired by Roko and were licensed to Old Kobe for the purpose of reserving and preserving to Old Kobe a total monopoly of all hydraulically actuated pumps for installation in oil wells. Said patents and licenses were acquired and held by Roko and Old Kobe pursuant to a plan and purpose to monopolize commerce in such hydraulic pumps, which plan originated in about 1933, and thereafter was pursued and furthered by Old Kobe's contracts with Rodless, with Plaintiff Alta Vista Hydraulic Company, Ltd., and with Arthur G. Gage, to the end that the product of Old Kobe was protected or fenced by its patent rights against the intrusion of commercially competitive products. Many of the patents so accumulated were not used by Old Kobe in production of its commercial product but were held by it for the purpose of prevention of the production of commercially competitive products.

39.

The imperative or immediate purpose of Old Kobe in negotiating and executing the contract of May 1, 1933, with Rodless, Plaintiffs' Exhibit 8, was acquisition of rights under the Humphreys and Crum patents, which it then believed to be necessary to permit it to manufacture and sell hydraulic pumps of the Kobe design without fear of infringement thereof, but the said contract was further intended by the parties to effect and serve the plan to monopolize commerce in hydraulically actuated pumps for oil wells as found in the next preceding finding, and did in fact further the same.

40.

In furtherance of the said purpose of Old Kobe to monopolize commerce in hydraulic pumps for oil wells, Roko purchased or acquired patent rights including three of the patents originally here in suit from Arthur G. Gage and Plaintiff Alta Vista Hydraulic Company, Ltd., and thereafter licensed them exclusively to Old Kobe. Plaintiff Kobe, Inc. received and asserted the benefits of such patent rights and now asserts some of the rights so obtained by this action.

41.

In furtherance of the purpose of Old Kobe to monopolize commerce as aforesaid, it acquired potentially competitive patent rights from Rodless (pursuant to contract which is Plaintiffs' Exhibit 8) and thereafter made contracts with Rodless which eliminated Rodless as a potential licensee under such patent rights. The benefits of such contracts devolved upon Plaintiff Kobe, Inc. which has enjoyed the same in furtherance of its existing monopoly.

42.

Old Kobe intended by the several contracts between itself, Roko, Rodless Pump Company, Arthur G. Gage and Alta Vista Hydraulic Company, Ltd., and by subsequent acquisition of patents and patent rights from others through the agency of Roko Corporation to monopolize the commerce of the several states in deep well hydraulic pumps for oil wells. Old Kobe, furthered and aided by the contracts referred to, did in fact monopolize the total commerce among the several states in deep well hydraulic pumps for oil wells during the period 1935 to the date in 1945 at which its assets were transferred to Dresser Indusrties, Inc. and the Plaintiff Kobe, Inc. pursuant to Defendants' Exhibit 34 in the evidence.

43.

So far as the record in this case shows, during the period of time that Plaintiff Kobe, Inc. has owned the rights under

such patents, and prior thereto during the period that Roko owned the same, no one ever asked either such Plaintiff or Roko for a license under any of such patents, and neither Plaintiff nor Roko has ever refused to grant such a license.

### 44.

Dresser Industries, Inc., at the time of its acquisition of the assets of Old Kobe, and at the time of its assumption of the liabilites of Old Kobe then was monopolizing the total commerce among the several states in deep well hydraulic pumps for oil wells, and was fully informed and aware of the purpose and effect of the patent pool which resided in Roko Corporation. Dresser Industries, Inc. acquired and transferred the assets of Old Kobe, and further acquired and transferred the assets of Roko Corporation, both to Plaintiff Kobe, Inc. its wholly owned subsidiary created for the purpose, with the purpose and intent to maintain, preserve and continue in Plaintiff Kobe, Inc. the total monopoly of commerce in such hydraulic pumps which had theretofore existed in Old Kobe. Plaintiff Kobe, Inc. was likewise fully informed and aware of the monopoly which had existed in Old Kobe prior to the organization of Plaintiff, and after acquisition of the assets of Old Kobe and of Roko Corporation intended to maintain, preserve and exercise the said total monopoly thus transferred to it.

### 45.

Following acquisition of the assets of Old Kobe and Roko Corporation by Dresser Industries, Inc. and transfer thereof to Plaintiff Kobe, Inc., the said plaintiff did monopolize the total commerce of the several states in deep well hydraulic pumps for oil wells from the date of said transfer to the date of appearance of the product of the Defendant Dempsey Pump Company in May of 1948, and thereafter did monopolize substantially all of such commerce, and continues to do so excepting only sales of the Defendant Dempsey Pump Company which this action seeks to suppress and prevent.

### 46.

Plaintiff Kobe, Inc. has employed its patent rights in furtherance and maintenance of its total monopoly of commerce in hydraulic pumps for oil wells. This action was brought and is maintained by Plaintiffs in furtherance of the monopoly found to be held and exercised by Plaintiff Kobe, Inc., and was brought and is maintained with the intention and purpose of preventing competition in the subject field by the Defendants Dempsey Pump Company and Specialty Sales and Service, Inc.

### 47.

Subsequent to the filing of this action, Plaintiff Kobe, Inc. wrote a letter to the purchasing agents or other personnel of various oil producers advising of the filing of this action (alleging infringement by the Dempsey pump) against Defendants, which is exemplified by Plaintiffs' Exhibit 20 of the evidence. In addition to such letter, personnel of Plaintiff Kobe, Inc. orally advised purchasers of hydraulic pumping equipment that the product of Dempsey Pump Company would be tested in the courts for infringement of patents held by Plaintiff Kobe, Inc. and that infringement was claimed. Such letter and oral statements were intended by Plaintiff Kobe, Inc. to deter or prevent purchases by such persons and corporations of hydraulic pumping equipment offered for sale by Dempsey Pump Company and Specialty Sales and Service, Inc. Plaintiff Kobe, Inc. intended by this means to preserve, maintain and secure its continued exclusive possession of the total commerce among the several states in deep well hydraulic pumps for oil wells.

### 48.

The several letters sent by Plaintiff Kobe, Inc. in September of 1948 to purchasers of hydraulic pumping equipment and the oral statements of employees of the said Plaintiff to such purchasers did in fact deter and prevent purchases by such persons and corporations of hydraulic pumping equipment offered for sale by the Defendants Dempsey Pump Company and Specialty Sales and Service, Inc.

**49.**

Plaintiff Alta Vista Hydraulic Company, Ltd. shared in the benefits of the total monopoly of Old Kobe, and has shared in the benefits of the succeeding total monopoly of Plaintiff, Kobe, Inc. by virtue of a contract which is Plaintiffs' Exhibit 12 in the evidence, wherein one of the patents in suit was licensed in consideration of a proportion of the total sales of Old Kobe and successively Plaintiff Kobe of hydraulic pumps for oil wells and unpatented auxiliary equipment.

**50.**

Plaintiff Alta Vista Hydraulic Company, Ltd. has furthered and aided the monopoly of Plaintiff Kobe, Inc. by joining as Plaintiff in the prosecution of this action upon a demand of Kobe, Inc. to assert the infringement by the Defendants of Letters Patent No. 1,907,947 here in suit.

**51.**

By virtue of its complete monopoly of all sales of deep well hydraulic pumps for oil wells, Plaintiff Kobe, Inc. has been at liberty to fix, and has fixed, the prices at which all such pumps have been sold since its organization, excepting only sales of the Dempsey Pump Company sought to be suppressed and prevented by this action. Prior to the organization of the said Plaintiff, Old Kobe enjoyed and exercised an identical power to fix such prices from 1935 to the date of transfer of the hydraulic pumping enterprise to Plaintiff Kobe, Inc. The power of each to fix such prices has been and is circumscribed by price or cost to the user of other fluid lifting means available to oil producers, to which they may have recourse in alternative to the deep well hydraulic pump. The prices at which Plaintiff Kobe, Inc., and previously Old Kobe, has sold its hydraulic pumps are geared to enable it to compete with other types of pumping equipment. The prices at which such hydraulic pumps have been sold by Plaintiff are not proved to have affected the prices at which such other types of pumping equipment have been sold.

**52.**

Old Kobe and Rodless Pump Company, pursuant to the contract dated March 1, 1933 (Plaintiffs' Exhibit 8), organized, dominated, and directed Roko, a holding corporation, wherein there was established in Roko a pool of patent rights relating to deep well hydraulic pumps, and fostered, extended and furthered said pool with the intention that the same should include, embrace and acquire sufficient patents to assure its licensee exclusive possession of commerce in hydraulic pumping equipment for the oil industry. Plaintiff Kobe, Inc. is now the sole beneficiary of the rights accumulated in such pool, and its existing monopoly is the result thereof.

**53.**

Plaintiff Kobe, Inc. commenced this action intending to secure judgments whereby the Defendants Dempsey Pump Company and Specialty Sales and Service, Inc. would be eliminated as competitors of the said Plaintiff in the commercial field whereof it held a total monopoly. The said Plaintiff believed it would prevail upon the causes of action it asserted herein, and expected thereby to remain in exclusive possession of the whole of the interstate markets for deep well hydraulic pumps for oil wells.

**54.**

Plaintiff Kobe, Inc. circulated its letter of September 27, 1948, addressed to purchasers of hydraulic pumping equipment, intending to forestall and prevent sales by the Defendants of products produced or offered by Dempsey Pump Company through the agency of Specialty Sales and Service, Inc. during the pendency of and until their action reached its expected judgment. The oral statements to customers by the employees of the said Plaintiff as shown by the evidence were made with the same purpose. Both were intended to further, foster and maintain the total monopoly of Kobe, Inc. of commerce in the subject field.

**55.**

The Plaintiff Kobe, Inc. did not prosecute its infringement action in bad faith, but pressed the same believing that it would recover the judgments prayed for therein, and believing that it was legally entitled to the relief prayed for. It also believed it had a legal right to circularize its letter of September 27, 1948 as an accompaniment of its infringement action. Nonetheless, it hoped and intended to eliminate the Defendants as competitors, and expected to do so by the action and the accompanying notice to the trade, and the said steps were taken in furtherance of the purpose of the said Plaintiffs to remain the sole occupant of the subject field of commerce.

**56.**

The acts of Plaintiff Kobe, Inc. in furtherance of its monopoly as set forth in Findings 53 and 54 interfered with and prevented sales of the products of the Defendant Dempsey Pump Company by the said Defendant and by the Defendant Specialty Sales and Service, Inc. which would have been made except for interference by the said Plaintiff.

**57.**

Except for the acts of Plaintiff Kobe, Inc., as set forth in Findings 53 and 54, the Defendants Dempsey Pump Company and Specialty Sales and Service, Inc. would have sold subsurface hydraulic pumps of the Dempsey design at the rate of six pumps per month from October 1, 1948 to July 1, 1950.

**58.**

The said Defendants did sell 18 pumps within the said period, would have sold 126 pumps except for the acts of Plaintiffs, and lost sales equal to the difference.

**59.**

The said Defendants lost 108 pump sales in the period October 1, 1948 to July 1, 1950 in consequence of the acts of Plaintiff Kobe, Inc., of which 49 were lost in the period October 1, 1948 to July 1, 1949, and 59 were lost in the period July 1, 1949 to July 1, 1950.

**60.**

Sales of hydraulic pumping units to the oil industry are ordinarily accompanied by sales of auxiliary equipment used in effecting the pumping installation. The Defendants Dempsey Pump Company and Specialty Sales and Service, Inc. usually, and as a normal incident to the sale of a pump, sold auxiliary equipment in quantity and gross dollar value equal to one and one-half times the proceeds of pumps sold. The said Defendants would have sold auxiliary equipment in connection with pump sales found to have been lost, in quantities and amounts equivalent to their experience in such sales, and with equivalent profit to themselves.

**61.**

At all times during the period October 1, 1948 to July 1, 1950, the Defendant Dempsey Pump Company had in stock or in readily available sources of supply sufficient auxiliary equipment to supply all demands therefor which would have occurred as an incident to sales of its hydraulic pump.

**62.**

The average profit to Dempsey Pump Company on auxiliary equipment sold in connection with pump sales, after payment of sales commissions, was and would have been in the amount of $412.00 per pump sale.

**63.**

The average of sales commissions to Specialty Sales and Service, Inc. on auxiliary equipment sold in connection with pump sales was and would have been in the amount of $165.49 per pump sale.

**64.**

The Defendant Specialty Sales and Service, Inc. pressed extensive selling efforts in behalf of the Dempsey Pump during the period October 1, 1948 to July 1, 1950, and paid its costs in respect thereof. The selling effort of Specialty was adequate to produce the sales found to have been lost by the acts of Plaintiff Kobe, Inc., and Specialty would not have been required to make additional expenditures of

352

money to achieve the same in the absence of interference by the Plaintiff Kobe, Inc.

65.

The Defendant Dempsey Pump Company owned and continuously operated manufacturing facilities sufficient to produce its pump in quantities in excess of its reasonably expected sales as found herein, and could have produced such pumps at the rate of six per month during the period October 1, 1948 to July 1, 1950, without additional investment in manufacturing plants, machinery, tools or other capital requirements.

66.

The manufacturing plant of Defendant Dempsey Pump Company remained in operation during the period October 1, 1948 to July 1, 1950, and at all times had in its employ and available for purposes of production, skilled personnel of all necessary qualifications to produce pumps in quantities sufficient to satisfy its expected market as found herein, and the said Defendant has fully paid the cost of such services. No additional cost for such services would have been incurred by the said Defendant to produce six pumps per month during the period in question, excepting only wages of machinists and others hereinafter valued and calculated as additional direct costs.

67.

The Defendant Dempsey Pump Company also had paid and defrayed all necessary overhead expense charges of its manufacturing plant for the period in question, and would not have incurred additional expense for overhead items in the production of six pumps per month during the said period.

68.

The Defendant Dempsey Pump Company would have incurred additional expense in the production of pumps to satisfy a market at the rate of six per month, which additional costs consist of the raw materials and semifinished parts used in manufacturing additional pumps, together with the direct cost of labor by machinists for the set-up, machining and assembly of the parts comprising the product.

69.

The Dempsey two-inch insert pump is adopted as the measure of additional cost referred to in the last finding, and is further adopted as the measure of value of sales lost in these findings. The said pump is the size demanded in more than 80 per cent of actual sales and is the lowest priced pump in the Dempsey line. Cost and selling price of this pump are adopted as typical of the additional cost and proceeds of the sales found to have been lost by the Defendants.

70.

In addition to items of cost which were prepaid, it would have cost the Defendant Dempsey Pump Company $176.00 per pump to produce such pumps at the rate of six per month in the period in question, which said figure represents the total of raw material costs, set-up costs, machining costs, and assembly costs. Curve 14 of Defendants' Exhibit 67 is adopted as correctly reflecting the additional costs which would have been required to produce pumps for sales which were lost.

71.

Under contract between the Defendants Dempsey Pump Company and Specialty Sales and Service, Inc., the latter was entitled to receive commissions on all sales of Dempsey pumps at the rate of 25 per cent of the selling price and at varying rates on auxiliary equipment. Under the same contract Dempsey Pump Company was obliged to advance and did advance $20,250.00 as a minimum guarantee to Specialty of commissions to be earned in the period October 1, 1948 to July 1, 1949. As a result of this agreement and its performance, Dempsey Pump Company had prepaid its selling cost upon all sales lost from October 1, 1948 to July 1, 1949, and was entitled to retain all commissions earned by Specialty in the period until the same should exceed the amount advanced.

72.

Beginning with July 1, 1949, the Defendant Dempsey Pump Company would have been obliged to pay to the Defendant Specialty Sales and Service, Inc. the sum

of $232.50 as selling commissions upon all pump sales made, plus commissions earned on auxiliary equipment, and this would be an additional cost to the said Defendant upon sales occurring subsequent to July 1, 1949.

### 73.

The Defendant Dempsey Pump Company would have received a minimum of $930.00 for each of pump sales found to have been lost by reason of the acts of the Plaintiff Kobe, Inc.

### 74.

During the period October 1, 1948 to July 1, 1949, the Defendants lost sales of 49 sub-surface hydraulic pumps, and the loss to Dempsey upon these sales was the difference between its additional direct costs at the rate of $176.00 per pump and the gross selling price of $930.00 per pump or $754.00 per pump sale lost. Extended over 49 sales the loss to Dempsey for these pump sales was $36,946.00. During this period Dempsey had prepaid its selling costs on auxiliary equipment as well as pumps. The result is that Dempsey lost a total of $577.49 auxiliary profit on each pump sale lost in the period. Extended over 49 sales the total loss of auxiliary profits for the period is $28,297.00 Specialty Sales and Service, Inc. sustained no loss in this period as its expected commissions were prepaid by Dempsey.

### 75.

During the period of July 1, 1949 to July 1, 1950, the Defendants lost sales of 59 sub-surface hydraulic pumps and related auxiliary equipment. The Defendant Specialty Sales and Service, Inc. lost commissions on these sales at the rate of $232.50 on each pump, or a total of $13,717.50 upon the total lost pump sales. The Defendant Specialty Sales also lost commissions on sales of auxiliary equipment at the rate of $165.49 per lost pump sale, or a total of $9,763.91 on lost sales of auxiliary equipment. During the same period and upon the same lost sales, Dempsey Pump Company lost $521.50 on each pump sale lost, or a total of $30,768.50

on lost pump sales. Dempsey also lost profits on lost sales of auxiliary equipment at the rate of $412.00 per lost pump sale, or a total of $24,308.00 on lost auxiliary sales.

### 76.

By reason of maintenance of Plaintiffs' infringement action, the Defendant Dempsey Pump Company was compelled to make substantial expenditures of money for expenses of resisting the action and continuing in business. These expenses would not have been incurred except for the acts of Plaintiff Kobe, Inc. in furtherance of its monopoly. The amount of these expenses, excluding attorneys' fees, was $8,045.00.

### 77.

By reason of the commencement and maintenance of Plaintiffs' actions for infringement and for unfair competition, the Defendant Dempsey Pump Company was compelled to expend sums of money for attorneys' fees incurred in the defense of said actions. The expenditures of this Defendant for this purpose reasonably were required to be in the amount of $15,000.00, and actually were in excess of such amount. The expenditure for attorneys' fees by the Defendant Dempsey Pump Company to defend the infringement action and the action for unfair competition was the consequence of and was solely occasioned by an act of the Plaintiffs in futherance of, and in aid of the illegal monopoly of the Plaintiff Kobe, Inc., and is recoverable by the Defendant Dempsey Pump Company as damages sustained by reason of an act prohibited by the antitrust laws.

### 78.

For purposes of recapitulation, the Court finds that the Defendant Dempsey Pump Company suffered the following losses by reason of the acts of Plaintiff Kobe, Inc. in furtherance of the monopoly found herein:

| | |
|---|---|
| Loss of receipts from pump sales October 1, 1948 to July 1, 1949 | $ 36,946.00 |
| Loss of profits from sales of auxiliary equipment—October 1, 1948 to July 1, 1949 | 28,297.00 |

Loss of receipts from pump sales—July 1, 1949 to July 1, 1950 .......... 30,768.50

Loss of profits from sales of auxiliary equipment July 1, 1949, to July 1, 1950 .......... 24,308.00

Expenses, other than attorneys' fees, caused by defense of the infringement action .......... 8,045.00

Attorneys' fees incurred in defending actions for infringement and unfair competition .......... 15,000.00

Total .......... $143,364.50

The Defendant Specialty Sales and Service, Inc. suffered the following losses by reason of the said acts of the said Plaintiff:

For the period October 1, 1948 to July 1, 1950 .......... None

Loss of commissions on pump sales July 1, 1949 to July 1, 1950 .......... $13,717.50

Loss of commissions on sales of auxiliary equipment—July 1, 1949 to July 1, 1950 .......... 9,763.91

Total .......... $23,481.41

The Defendants Dempsey Pump Company and Specialty Sales and Service, Inc. were respectively damaged by the acts of Plaintiff Kobe, Inc. in the respective total amounts shown above.

### 79.

Considering the importance of the litigation, the amount involved, the time and work expended, the difficulty of the issues and questions involved, and the result obtained, a reasonable allowance to the Defendants for attorneys' fees incurred in the prosecution of their counterclaims for damages under Title 15 U.S.C.A. § 15, is in the following amounts:

To the Defendant Dempsey Pump Company .......... $25,000.00

To the Defendant Specialty Sales and Service, Inc. .......... 5,000.00

### 80.

Attorneys' fees of the Defendants in the infringement action and the unfair competition action have been allowed as damages upon Defendants' counterclaim under the antitrust laws, but are denied under the provisions of Title 35 U.S.C.A. § 70, and the Court finds that circumstances requiring an award under the latter statute are not shown by the record.

### 81.

The Plaintiff Alta Vista Hydraulic Company, Ltd. is not shown to have participated in the acts which caused Defendants' injury.

## Conclusions of Law

Upon the foregoing Findings of Fact, the Court concludes as a matter of law:

### 1.

The Court has jurisdiction of the parties and of the subject matter of the claims of the Plaintiffs and of the several counterclaims of the Defendants.

### 2.

Claims 7, 9, 10, 19 and 20 of United States Letters Patent No. 1,907,947 are valid at law and are infringed by the Defendants.

### 3.

Claims 1, 2, 3, 4 and 6 of United States Letters Patent No. 1,907,951 are invalid at law, but if valid are infringed by the Defendants.

### 4.

Claim 34 of United States Letters Patent No. 2,081,220 is invalid at law, and even if valid is not infringed by the Defendants.

### 5.

Claims 1, 4, 5, 6, 7, 8 and 9 of United States Letters Patent No. 2,081,223 are invalid at law, but if valid are infringed by the Defendants.

### 6.

Claims 21, 22, 23, 24 and 26 of United States Letters Patent No. 2,473,864 are invalid at law, but if valid are infringed by the Defendants.

**7.**

 Plaintiffs should take nothing upon their claims for relief for infringement of the United States Letters Patent above described for misuse of the said patents in violation of the policy of the United States as expressed in the Sherman and Clayton Acts; and the Defendants accordingly should have judgment of the issues joined upon Plaintiffs' complaint for infringement.

**8.**

Plaintiffs should take nothing upon their second claim respecting unfair competition, and Defendants should have judgment of the issues joined thereon.

**9.**

Plaintiffs assert and enjoy a monopoly of part of the trade and commerce among the several states of the United States in violation of the laws of the United States relating thereto.

**10.**

 Plaintiffs should be denied relief under any of their patents relating to fluid-actuated pumps until such time as the said unlawful monopoly shall have been dissolved, and its effect shall have been dissipated, and pending such events should be enjoined from asserting or claiming infringement of said patents by any of the Defendants by legal action or otherwise.

**11.**

Defendants Dempsey Pump Company and Specialty Sales and Service, Inc. should have judgment against the Plaintiff Kobe, Inc. for threefold the damages found to be sustained by them under Finding of Fact Number 78, which recovery should be in the following total sums:

Dempsey Pump Company $430,093.50
Specialty Sales and Service
Inc.      $ 70,444.23

**12.**

The said Defendants should recover attorneys' fees for the prosecution of their counterclaims in the amounts set forth in Finding of Fact number 79.

**13.**

The Defendants Dempsey Pump Company and Specialty Sales and Service, Inc. should take nothing against the Plaintiff Alta Vista Hydraulic Company, Ltd.

**14.**

Defendants should recover their costs upon all phases of the cause.