**GLEN MANUFACTURING, INC.,**
Plaintiff,

v.

**PERFECT FIT INDUSTRIES, INC.,**
Defendant.

No. 63 Civ. 3513.

United States District Court
S. D. New York.

March 24, 1969.

Supplemental Opinion May 1, 1969.

Kane, Dalsimer, Kane, Sullivan & Smith, New York City, for plaintiff, by David H. T. Kane, New York City; William J. Stellman and James R. Sweeney, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel.

Ward, Haselton, McElhannon, Brooks & Fitzpatrick, New York City, for defendant, by Robert M. Freeman, New York City; Arthur H. Seidel and Joel S. Goldhammer, Philadelphia, Pa., of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEVET, District Judge.

This is an action by plaintiff, Glen Manufacturing, Inc. (hereinafter "Glen"), against defendant Perfect Fit Industries, Inc. (hereinafter "Perfect Fit"), for breach of a so-called licensing agreement with respect to the manufacture, use and sale of toilet tank covers and for an accounting by defendant to plaintiff of the royalties due and owing under said licensing agreement, and for appropriate judgment.

Jurisdiction is based upon diversity, the plaintiff being a Wisconsin corporation and the defendant a Pennsylvania corporation having its place of business in the City of New York.

It is conceded that the defendant has manufactured and sold toilet tank covers and has not paid any royalties thereon to the plaintiff, except that royalties have been paid on all tank covers manufactured by the Queen Chenille Company of Dalton, Georgia, and sold by defendant. (Pretrial order, ¶ 3(a) (3))

The case was tried to the court without a jury on the issue of liability only.

## CLAIM

Plaintiff contends that the license agreement in question is clear and un-

ambiguous and must be interpreted according to its plain and ordinary language, requiring the payment of royalties on each and every toilet tank cover manufactured or sold by defendant whether it is within the scope of plaintiff's United States Letters Patent No. 2652874 or not.

## DEFENSES

The defendant raises the following affirmative defenses:

1. That the agreement to pay royalties covers only toilet tank covers coming within the scope of United States Letters Patent No. 2652874 and that the defendant has not made or sold any toilet tank covers coming within the scope of said patent;

2. That if the agreement is interpreted to mean that royalties are due and owing for each and every toilet tank cover manufactured or sold by defendant whether it is within the scope of the said patent or not, the plaintiff is barred from seeking relief because of misuse of said patent, particularly in that plaintiff has sought to restrain competition in the toilet tank cover industry by requiring royalties on toilet tank covers not within the scope of the said patent.

3. That the agreement is unenforceable because it binds defendant not to contest the validity of the said United States Patent and a Canadian Patent, No. 524616, beyond the termination of the agreement and that this constitutes a patent misuse.

4. That the agreement is unenforceable because the royalty is so high as to be confiscatory and constitutes a patent misuse.

5. That the agreement is unenforceable because plaintiff has granted Bell Industries, Inc., another licensee, a royalty which is one-half the rate charged to plaintiff's other licensees, including defendant, and that this constitutes a misuse.

After hearing the testimony of the parties, examining the exhibits, the pleadings and the proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff is a Wisconsin corporation, having its principal office and place of business at Milwaukee, Wisconsin; defendant is a Pennsylvania corporation, having a place of business in the City of New York.

2. Plaintiff is the owner of United States Letters Patent 2652874, issued September 22, 1953 (Pl. Ex. 15, p. 1), and Canadian Patent No. 524616, issued May 1, 1956 (Pl. Ex. 15, p. 2).

3. Commencing in 1959 and prior to August 17, 1960, a number of tiolet tank cover manufacturers requested and received from plaintiff licenses to manufacture and sell toilet tank covers. (Pl. Ex. 15; Deft. Exs. U–Z and AA–AD).

4. Commencing on or about August 17, 1960, negotiations were entered into between defendant and plaintiff with respect to the execution of a licensing agreement by plaintiff to defendant with respect to the manufacture and sale of toilet tank covers, and on June 25, 1962 an agreement was executed between plaintiff and defendant. (See Pl. Ex. 15) After recitation of the fact that plaintiff is the owner of United States Letters Patent No. 2652874, issued on September 22, 1953, that defendant desires to acquire a license for itself and its subsidiary, C. & H. Tufting Co. (hereinafter "C&H"), to manufacture toilet tank covers under said patent, the said contract contained the following terms: (1) Glen granted Perfect Fit and C&H a non-exclusive license to make, use and sell products covered by said patent; and (2) Glen made a similar grant to Perfect Fit to make, use and sell products covered by Canadian Patent No. 524616, issued May 1, 1956, owned by plaintiff. Paragraph (4), which is the principal provision involved in this suit, is as follows:

"(4) PERFECT FIT and C. & H. agree to pay to GLEN a royalty of ten

(10) cents on *each* toilet tank cover made or sold by PERFECT FIT or C. & H. after the date of this agreement, for the full term hereof, provided however, that only one payment of royalty will be made by PERFECT FIT or C. & H. on any single toilet tank cover sold under this agreement." (Emphasis supplied)

5. The contract further provided that the license should continue until the expiration of the said United States Patent and that Perfect Fit and C&H will not at any time after the date of the agreement contest the validity of the said United States Patent or the said Canadian Patent, and this covenant shall survive the termination of the agreement.

6. After the execution of the license agreement, defendant commenced manufacturing and selling toilet tank covers. No royalties have ever been paid by the defendant to the plaintiff on toilet tank covers manufactured or sold by it since the execution of the license agreement except that royalties have been paid on all tank covers manufactured by the Queen Chenille Company of Dalton, Georgia and sold by defendant. (Pretrial order ¶ 3(a) (3))

7. Up to March 31, 1964, defendant has sold approximately 157,400 toilet tank covers upon which no royalties have been paid. (Trial minutes, p. 11)

8. Plaintiff has demanded of defendant and continues to demand royalties on all tank covers regardless of whether or not they are covered by the scope of the patent. (Pretrial order ¶ 3(a) (5))

9. Plaintiff has license agreements with other licensees, all of which contain a requirement for payment of royalties "on each toilet tank cover made or sold" by the licensees, except that the license with a certain company, Norwood, provided that royalties were due on "each toilet tank cover sold to Sears Roebuck and Company, Simpson Sears Ltd., or any of their subsidiaries." (Pretrial order ¶ 3(a) (6))

10. The license agreement involved in this case is clear and unambiguous and the word "each" as used in paragraph.(4) of the said license agreement is used in its common and ordinary sense, requiring payment of a royalty on each and every toilet tank cover manufactured or sold by defendant whether or not such toilet tank cover comes within the scope of plaintiff's United States Patent No. 2652874.

11. Even when the correspondence between plaintiff and defendant is considered, there is no interpretation of the license agreement indicated nor any intent shown except that royalties were to be paid on each and every toilet tank cover manufactured or sold by defendant whether or not it came within the scope of plaintiff's patent.

## DISCUSSION

### I.

### INTERPRETATION OF THE AGREEMENT

■ Unless the provisions of a contract are ambiguous or uncertain, or there is a showing of mistake, fraud or deception, a court must interpret the contract exactly as it is written. Douglass v. Douglass, 88 U.S. 98, 21 Wall. 98, 22 L.Ed. 479 (1874); Florida Canada Corp. v. Union Carbide & Carbon Corp., 280 F.2d 193, 196 (6th Cir. 1960), cert. denied 364 U.S. 902, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960).

■ Since the license agreement involved in this case is clear and unambiguous, and since there is no evidence of mistake, fraud or deception in the same agreement nor any allegation by defendant to that effect, this court may not alter its provisions in any way. The said agreement can only be interpreted to require royalties on each and every toilet tank cover manufactured or sold by defendant regardless of whether it comes within the scope of plaintiff's said patent.

## II.

## DEFENSE OF MISUSE OF PATENT

■ By requiring royalties on all toilet tank covers manufactured or sold by defendant whether or not the toilet tank covers come within the scope of United States Patent No. 2652874, plaintiff is guilty of a patent misuse. This royalty structure has the effect of raising the cost of non-patented, competing toilet tank covers, thereby restraining their output and tending to lessen competition in the toilet tank cover industry.

■ This practice is in open conflict with both the antitrust and patent laws. The antitrust laws generally seek to insure the proper working of the free enterprise system by preventing artificial market restraints. To promote scientific innovations and invention, the patent laws grant a monopoly to the patentee for a limited time, subject to the strict limits of the patent. Where the patentee seeks to use its patent monopoly to suppress the manufacture and sale of non-patented competing items in any manner other than that of free competition, the courts have a duty to protect the public interest and restrain the patentee. Morton Salt v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); Columbus Automotive v. Oldberg Mfg., 264 F.Supp. 779 (D.Colo.1967), aff'd 387 F.2d 643 (10th Cir. 1968).

Defendant's argument that a royalty structure based on a percentage of licensee's total sales of its product is permitted by the courts according to Automatic Radio Mfg. v. Hazeltine Research, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950), is not persuasive. In Hazeltine, the licensor possessed over 570 patents and 200 patent applications for electronic apparatus used in radios, televisions and phonographs, and a royalty structure based on a percentage of the licensee's total sales was devised to avoid the difficulty of determining whether each type of the licensee's product embodied any of the patents or patent applications.

339 U.S. at 833, 70 S.Ct. 894. Because of the complexities involved in the patents and the alleged difficulty in determining whether the patented devices were used in the licensee's products, the court permitted the royalty structure in question.

■ However, the plaintiff's patent in the instant case is a single, relatively uncomplicated object, a toilet tank cover, and it would be possible to determine readily whether plaintiff's patent has been utilized. Plaintiff has not alleged, nor does it appear, that a royalty structure based on a percentage of defendant's total sales of toilet tank covers is necessary because of any difficulty in ascertaining whether its patent is utilized. Therefore, the rationale in Hazeltine would not apply here.

## III

## EFFECT OF PATENT MISUSE

■ The law is well established in the federal courts that where an agreement contains a single promise and several considerations, if any part of the consideration is contrary to public policy, the whole contract is void. Hazelton v. Sheckells, 202 U.S. 71, 50 L.Ed. 939 (1906).

The Hazelton case concerned a plaintiff who contracted with defendant to buy a certain tract of land for $9,000 plus services consisting of lobbying in the United States Congress for the purchase of this land for a federal hall of records. Due to plaintiff's efforts, Congress did eventually pass a bill to buy the land for over $14,000. But the defendant, rather than conveying to the plaintiff for $9,000, conveyed to the United States directly for $14,000. Plaintiff sued for specific performance of his original contract, and the court refused enforcement because part of the consideration, which consisted of the services to procure the public legislation, was against public policy. The court stated that since the promise to sell was based both on the illegal lobbying services and the legal $9,000 payment, it may not be enforced. See also Rutherford v. Elliott, 23 F.2d

250 (6th Cir. 1928); Lewis v. Jackson & Squire, 86 F.Supp. 354 (W.D.Ark. 1949), appeal dismissed, 181 F.2d 1011 (8th Cir. 1950); Williston on Contracts, Vol. VI, § 1780, p. 5063 (1938).

This same principle has been long recognized in New York. Foley v. Speir, 100 N.Y. 552, 3 N.E. 477 (1885); Brearton v. DeWitt, 252 N.Y. 495, 170 N.E. 119 (1930); Angresani v. Tozzi, 217 A.D. 642, 216 N.Y.S. 161 (1st Dept. 1926), aff'd 245 N.Y. 558, 157 N.E. 856 (1927). In the Foley case, as in the instant case, there was an agreement to pay cash for both lawful and unlawful purposes, and the New York Court of Appeals held that since part of the consideration was for unlawful purposes, and these purposes were unseverable from the whole agreement, the entire contract was void and could not be enforced.

Other than New York, no other state is alleged to have any contacts with the said license agreement, except possibly Wisconsin. But there is no conflicts of law problem because, even if Wisconsin contracts law is applicable, Wisconsin has established the same legal principle regarding partial illegality of consideration as the federal and New York courts. See Perma-Stone Corp. v. Merkel, 255 Wis. 565, 39 N.W.2d 730 (1949).

In the instant case, plaintiff made one promise—to grant a non-exclusive license to defendant for its toilet tank cover patent. In return, defendant promised two separate considerations—royalties on toilet tank covers within the scope of plaintiff's patent, and royalties on toilet tank covers beyond the scope of plaintiff's patent. One part of the consideration, the royalties on the toilet tank covers beyond the scope of plaintiff's patent, constituted a patent misuse, and, therefore, was illegal. It is impossible to say that the promise was not induced by both the legal and illegal consideration. The promise must be dependent on the entire consideration, and the contract is, therefore, unseverable. In this case, the contract is void and this court may not enforce any part of it.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and the subject matter under Title 28 U.S.C.A. § 1332.

2. The said license agreement is clear and unambiguous and required a royalty on each and every toilet tank cover manufactured or sold by the defendant whether or not such toilet tank cover comes within the scope of plaintiff's United States Patent No. 2652874.

3. Plaintiff's royalty structure thus tends to lessen competition in the toilet tank cover industry by raising the costs involved on non-patented competing toilet tank covers.

4. Plaintiff is guilty of a patent misuse, and the patent misuse constitutes partial illegality of consideration.

5. The said license agreement is wholly null and void because of the partial illegality of consideration.

6. Since the agreement is clear and unambiguous without possible alternative interpretations, it is not susceptible of another construction by this court which would give it a legitimate effect.

7. Because this court finds paragraph (4) of the agreement to be a patent misuse by plaintiff, making the entire agreement unenforceable, it is not necessary to make a determination of the other issues raised by defendant.

8. Defendant, Perfect Fit, is entitled to judgment dismissing plaintiff's complaint, with costs and disbursements.

Settle judgment on notice pursuant hereto.

## SUPPLEMENTAL OPINION

Three motions have been submitted to this court concerning aspects of its Opinion, Findings of Fact and Conclusions of Law, dated March 24, 1969:

(1) Defendant, Perfect Fit Industries, Inc. (hereinafter called "Perfect Fit"), moves for entry of an order awarding treble damages for legal fees on its successful defense and counterclaim in Glen Manufacturing, Inc. v. Perfect Fit Industries, Inc., 63 Civ. 3513.

(2) Plaintiff, Glen Manufacturing, Inc. (hereinafter called "Glen"), moves, first, for a reconsideration of this court's determination that plaintiff is not entitled to royalties pursuant to a licensing agreement with defendant Perfect Fit because of a misuse of patent.

(3) Plaintiff moves, second, to amend this court's Findings of Fact to delete any finding of antitrust violations.

## I.

### MOTION OF DEFENDANT, PERFECT FIT, FOR AN ORDER AWARDING TREBLE DAMAGES FOR ATTORNEYS' FEES.

In its original answer and counterclaim, Perfect Fit claimed treble damages pursuant to the antitrust laws of the United States, inclusive of attorneys' fees (Answer, ¶¶ 20(c) and (d)). However, the pleadings were deemed amended by paragraph 2 of the pretrial order in accordance with the framing of issues in paragraph 8 of that order, which fails to allege any claim for damages suffered by the defendant due to violation of the antitrust laws. It is instructive also to note that there was no reference to a claim for treble damages in the trial memoranda, or in the oral arguments. Moreover, for purposes of trial, defense counsel seemed to have forgotten the very issue of patent misuse and antitrust violations upon which this court disposes of the action.

Defendant moves for entry of this order pursuant to 15 U.S.C. § 15, which states:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Defendant contends that attorneys' fees for defending against the claim of the plaintiff for royalties owing under the invalid licensing agreement, together with attorneys' fees for successfully prosecuting the defendant's antitrust counterclaim, should be trebled and constitute damages due and owing to the defendant. Kobe, Inc. v. Dempsey Pump Co., 97 F.Supp. 342 (N.D.Okl.1951), aff'd 198 F.2d 416 (10th Cir.), cert. denied 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952); Clapper v. Original Tractor Cab Company, 165 F.Supp. 565 (S.D.Ind. 1958), reversed in pertinent part 270 F. 2d 616 (7th Cir. 1959), cert. denied 361 U.S. 967, 80 S.Ct. 588, 4 L.Ed.2d 547 (1960); Dairy Foods Inc. v. Dairy Maid Products Coop, 297 F.2d 805, 809 (7th Cir. 1961); Hazeltine Research, Inc. v. Zenith Radio Corporation, 388 F.2d 25, 35 (7th Cir. 1967), cert. granted 391 U.S. 933, 88 S.Ct. 1849, 20 L.Ed.2d 853 (1968).

From the cases cited by the defendant, there is precedent for regarding attorneys' fees incident to defending *patent infringement* actions as an element of treble damages when a patentee enforces his patent rights for the purposes of furthering unlawful monopolistic activities. However, the instant action arises out of a suit to enforce a royalty arrangement set forth contractually in a licensing agreement; claims of patent infringement are completely absent. The plaintiff sues the defendant for breach of a contractual arrangement which plaintiff supposed to be binding; no showing of bad faith or unconscionable conduct has been made, though such a showing is not determinative under 15 U.S.C. § 15. Where a patentee enforces his rights for apparently lawful purposes, the cost of defense does not become an element of damages under the Clayton Act. Malta Manufacturing Company v. Osten, 215 F.Supp. 114 (1963); Straus v. Victor Talking Machine Co., 297 F. 791 (2nd Cir. 1924).

In the instant case, suit was brought by Glen for the lawful purpose of enforcing a licensing agreement as-

sumed to be valid. Particularly here, where no evidence of bad faith or coercion is present, expenses of litigation are not recoverable as an element of triple damages:

"Free access to the courts must neither be denied nor penalized. Of this principle, the case at bar is a perfect illustration. When the suit of Victor v. Straus was brought, the most which can be said against Victor Company is that the questions litigated were debatable. * * * In such circumstances, to say that a suit brought to determine rights may be part of a scheme to violate statute law, and, if so, that the suitor may be subject to respond in damages, is to announce that he who seeks the judgment of the courts does so at his peril. * * *

" * * * it would be a negation of the principle and right of free access to the courts to hold that the submission of rights to judicial determination involved a dangerous gamble which might subject the loser to heavy damage." Straus v. Victor Talking Machine Co., 297 F. 791, 798, 799 (2nd Cir. 1924).

▓▓▓ It is, therefore, the opinion of this court that any legal basis for attorneys' fees in the successful defense of this licensing agreement action should emanate from and find its source in 35 U.S.C. § 285. Under that provision, the award of attorneys' fees is discretionary with the court, and should not be allowed except upon a finding of unfairness, bad faith, or inequitable or unconscionable conduct. See, generally, Park-In-Theatres v. Perkins, 190 F.2d 137, 142 (9th Cir. 1951); Rohr Aircraft Corp. v. Rubber Teck, Inc., 266 F.2d 613 (9th Cir. 1959); Federal Welding Service, Inc. v. Dioguardi, 295 F.2d 882 (2nd Cir. 1961); Formal Fashions, Inc. v. Braiman Bows, Inc., 254 F.Supp. 389 (S.D.N.Y.), aff'd. 369 F.2d 536 (2nd Cir. 1966); and opinion of this court, Thermovac Industries Corp. v. Virtis Co., Inc., unreported, 65 Civil 586 (July 17, 1968).

This court in its Opinion, Findings of Fact and Conclusions of Law of March 24, 1969, did not allow attorneys' fees to defendant. There is no error in this determination; the motion to enter an order for treble attorneys' fees is denied.

## II

## MOTION OF PLAINTIFF, GLEN, FOR RECONSIDERATION OF THE ISSUE OF PATENT MISUSE.

The plaintiff, Glen, petitions this court for reconsideration of that part of its opinion dated March 24, 1969 which held the license agreement in suit wholly null and void due to a patent misuse which constituted partial illegality of consideration. After reexamination of the testimony of the parties, the exhibits, and the submissions by counsel, this court concludes that there is no error in its previous determinations.

Counsel for plaintiff persists in reading Automatic Radio Manufacturing Company v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1949) as justification for the licensing agreement in suit. Such a reading is unwarranted. Hazeltine did little more than establish a reasonable method of calculating royalties in a situation where it was virtually impossible to determine whether each product manufactured by the licensee embodied any of the 570 patents or 200 patent applications for electronic apparatus. Because of the complexities involved in the patents and the difficulty in determining whether the patented devices were used in the licensee's products, the court permitted the royalty structure in question. The Hazeltine rationale is, therefore, an exception to the general rule requiring a strict, limited royalty structure; it is by no means the standard in a case such as the present where the patented item involved is a single, simple, uncomplicated object.

In its memorandum in support of the petition for reconsideration, plaintiff relies on several Supreme Court and Court of Appeals decisions, none of which even implies the result sought by plaintiff.

Brulotte v. Thys Co., 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), in the very passage cited by plaintiff, demonstrates the unique application of the Hazeltine rationale to situations where patent usage is impossible to determine, and computation by formula is both convenient and reasonably necessary. Brulotte involved a license agreement which required payment of royalties after expiration of the licensed patent. Holding that a patentee's use of a royalty agreement which projects beyond the expiration date of the patent is unlawful per se, Mr. Justice Douglas went on to observe that "to use that leverage to project those royalty payments beyond the life of the patent is analogous to an effort to enlarge the monopoly of the patent by tieing the sale or use of the patented article to the purchase or use of unpatented ones. See Ethyl Gasoline Corp. v. United States, 309 U.S. 436 [60 S.Ct. 618, 84 L.Ed. 852]; Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 664–665 [64 S.Ct. 268, 270–271, 88 L.Ed. 376], and cases cited." Id. at 33, 85 S.Ct. at 179.

Plastic Contact Lens Co. v. Butterfield, 366 F.2d 338 (9th Cir. 1966), maintains the same distinctions. The issues presented in the complaint were limited to issues not of patent law but of law pertaining to the charges of unfair competition, tortious interference with contractual relationships, and infringement upon federal prohibitions against certain trust activities. Id. at 342. Plastic had entered into contracts with numerous licensees. As consideration for its grants of the licenses, the contracts provided that the licensees were to pay royalties, the amounts of which were to be measured by the amount of the total current sales (as opposed to past sales) by each particular licensee. Id. at 342. The Court of Appeals predicated its decision on the patent misuse issue upon findings of fact by the District Court: "[w]hile ruling that Plastic had produced no evidence to support its claim that its method of royalty determination was to accomplish simplified accounting, the court

accepted Butterfield's position that its royalty scheme was conceived and applied for that purpose." Id. at 343. Accordingly, the Court of Appeals upheld the license agreement since it assumed, without deciding, that the royalty payment provisions of the license agreement in suit were conceived and applied solely for the purpose of "simplified accounting." By contrast, the royalty payment provisions of the license agreement in the instant case are totally unnecessary for accounting or any other legitimate purpose.

American Photocopy Equipment Company v. Rovico, Inc., 384 F.2d 813 (7th Cir. 1967), distinguishes itself from the instant case by the very holding and discussion cited by plaintiff. The patent in suit in Rovico involved a photocopying device which contained several elements in the prior art which the patentee did not invent, but which were found to constitute an integral part of an inventive arrangement of the elements to achieve an unobvious result. One such part of the patented device was an unpatented exposure unit. The Court of Appeals held that the entire device was properly patented, and that the inclusion within the device of necessary prior elements did not constitute a patent misuse. The Court specifically distinguished Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268 (1943): "there the competition sought to be controlled by the patent was not the sale of the patented assembly 'but merely competition in the sale of the unpatented thermostatic controls.'" Id. at 818. By contrast, the royalty provisions in suit in the present case fall squarely within the situation contemplated by Mercoid.

Hen Pen M Development Corporation v. Watson-Stillman Co., 71 F.Supp. 906 (D.C., 1947), turned on precisely the same distinction as American Photocopy: "The instant case differs from Mercoid Corporation v. Mid-Continent Investment Co. and Philad Company v. Lechler Laboratories, Inc., * * * [107 F.2d 747 (2nd Cir. 1939)] in that royalty here is not based solely upon the unpatented part

of the whole. On the contrary, it covers the whole which of course includes unpatented parts." Id. at 912. By contrast, the present case concerns one item, a toilet tank cover, which clearly is or is not within the scope of the patent.

In conclusion, the present case is controlled by the principles enunciated in Morton Salt v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942), and Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1943). Plaintiff has attempted to restrain competition in the toilet tank industry by requiring royalties both on patented and on unpatented toilet tank covers produced by its patent licensee, defendant Perfect Fit. Toilet tank covers are extraordinarily simple, uncomplicated items. It is both reasonable and proper to require strict royalty standards when no complexities of accounting dictate a variant course. Accordingly, plaintiff is guilty of a patent misuse which vitiates the license agreement; defendant, Perfect Fit, is entitled to judgment dismissing plaintiff's complaint on the merits, with costs and disbursements; and plaintiff's motion for reconsideration is denied.

### III.

MOTION OF PLAINTIFF, GLEN, FOR AMENDMENT OF THE FINDINGS OF FACT CONTAINED IN THE OPINION OF MARCH 24, 1969, RELATING TO VIOLATIONS OF THE ANTITRUST LAWS.

Plaintiff moves to strike all findings of fact indicating antitrust violations from this court's opinion dated March 24, 1969. Considering the present determination denying treble attorneys' fees, it is unnecessary to dwell at length upon plaintiff's contentions. In brief, plaintiff urges that Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402 (1942), and Transparent-Wrap Machine Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563 (1947) preclude the treatment of a patent misuse as an antitrust violation. However, these cases merely hold that such a misuse *need not* rise to the status of an antitrust violation; while other cases, notably International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947), United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962) indicate that patent misuse may indeed restrain trade and thereby violate the antitrust laws. Mercoid Corp. v. Minneapolis Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396 (1944), together with the remand case reported at 142 F.2d 549 (7th Cir. 1944), control the disposition of this motion.

Accordingly, the motion to strike or amend findings of fact is denied.

So ordered.