**GLEN MFG. INC., Plaintiff-Appellant and Cross-Appellee,**

v.

**PERFECT FIT INDUSTRIES, INC., Defendant-Appellee and Cross-Appellant.**

**Nos. 255, 256, Dockets 33795, 33952.**

United States Court of Appeals Second Circuit.

Argued Dec. 2, 1969.

Decided Jan. 13, 1970.

Certiorari Denied April 20, 1970.

See 90 S.Ct. 1365.

William J. Stellman, Chicago, Ill. (Hofgren, Wegner, Allen, Stellman & McCord, James R. Sweeney, Chicago, Ill., Kane, Dalsimer, Kane, Sullivan & Kurucz, David H. T. Kane, New York City, on the brief), for plaintiff-appellant and cross-appellee.

Arthur H. Seidel, Philadelphia, Pa. (Seidel, Gonda & Goldhammer, Joel S. Goldhammer, Philadelphia, Pa., Ward, McElhannon, Brooks & Fitzpatrick, New York City, on the brief), for defendant-appellee and cross-appellant.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Appellant Glen Mfg. Inc. ("Glen") sued Perfect Fit Industries, Inc. ("Perfect Fit") in the United States District Court for the Southern District of New York for breach of a licensing agreement covering the manufacture, use and

sale of toilet tank covers, and for an accounting of royalties due. Following a non-jury trial before Richard H. Levet, J., on the issue of liability, the judge found that Glen's licensing agreement amounted to patent misuse because it called for royalties on all toilet tank covers sold by Perfect Fit instead of only on those coming within the scope of the patent. 299 F.Supp. 278 (S.D.N.Y. 1969). This finding was reaffirmed in a Supplemental Opinion, id. at 283. Glen appeals from the dismissal of its complaint. Judge Levet also denied Perfect Fit's motion for an order awarding treble damages for attorneys' fees under 15 U.S.C. § 15. Perfect Fit cross-appeals from that aspect of Judge Levet's decision. For reasons indicated below, we remand the case for further findings concerning the issue of patent misuse.

It is not necessary to recount all the facts giving rise to this litigation. The key issue on appeal revolves around paragraph four of the licensing agreement between Glen and Perfect Fit (including the latter's subsidiary, C. & H. Tufting Co.). That paragraph provides:

> (4) Perfect Fit and C. & H. agree to pay to Glen a royalty of ten (10) cents on each toilet tank cover made or sold by Perfect Fit or C. & H. after the date of this agreement, for the full term hereof, provided, however, that only one payment of royalty will be made by Perfect Fit or C. & H. on any single toilet tank cover sold under this agreement.

Defendant Perfect Fit argued in the district court, inter alia, that the agreement only covered toilet tank covers coming within the scope of the patent, and that it was not obligated to pay any royalties to plaintiff Glen because it had not used the teaching of the patent in its manufacture of toilet tank covers. Glen claimed that the agreement contemplated royalties on all toilet tank covers manufactured by Perfect Fit, whether or not they were included within the scope of the patent. Judge Levet found that the agreement was "clear and unambiguous" and

can only be interpreted to require royalties on each and every toilet tank cover manufactured or sold by defendant regardless of whether it comes within the scope of plaintiff's said patent.

299 F.Supp. at 281. However, the judge viewed this construction of the contract as fatal to its enforceability because the contract so construed amounted to patent misuse.

> This royalty structure has the effect of raising the cost of non-patented, competing toilet tank covers, thereby restraining their output and tending to lessen competition in the toilet tank cover industry.
>
> This practice is in open conflict with both the anti-trust and patent laws.

Id. at 282.

In the district court, Glen defended the agreement, inter alia, by relying on Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950), which approved a royalty structure based on a percentage of a licensee's total sales, including products not covered by the patents being licensed. However, Judge Levet rejected the contention that *Automatic Radio* justified Glen's licensing agreement. The judge held that such a royalty device is "an exception to the general rule requiring a strict, limited royalty structure," and is permitted only when required by the complexity or multiplicity of the patents in question or by the difficulty of determining whether or not the patent has been utilized. Id. at 285–287.

Less than a week after the entry of judgment below, the Supreme Court issued its opinion in Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), again discussing the relevant criteria for patent misuse. The Court held in *Zenith* that

> *conditioning* the grant of a patent license upon payment of royalties on products which do not use the teach-

ing of the patent does amount to patent misuse. [Emphasis added.]

Id. at 135, 89 S.Ct. at 1582. "Conditioning" was defined as follows:

that is, where the patentee refuses to license on any other basis and leaves the licensee with the choice between a license so providing and no license at all.

Id. The Court relied on

the principle that a patentee may not use the power of his patent to levy a charge for making, using, or selling products not within the reach of the monopoly granted by the Government.

Id. at 136–137, 89 S.Ct. at 1583.

However, the Court did not condemn all licensing agreements in which royalties are based on total sales rather than on use of the patent. Thus, the arrangement in *Automatic Radio, supra,* was approved because under the facts of that case, such a method of calculating royalties was "a convenient method designed by the parties to avoid determining whether each radio receiver embodied an HRI patent." 395 U.S. at 137, 89 S.Ct. at 1584. The key factor in determining patent misuse in this situation is whether the licensing agreement containing a total-sales royalty structure is the result of "conditioning" in the *Zenith* sense; the mere fact of agreement is not determinative.

no such inference follows from a mere license provision measuring royalties by the licensee's total sales even if, as things work out, only some or none of the merchandise employs the patented idea or process, or even if it was foreseeable that some undetermined portion would not contain the invention.

Id. at 138, 89 S.Ct. at 1584. Relevant criteria in determining whether there was "conditioning" would include whether the provision was bargained for or imposed and whether the licensee made "protestations" which were overridden.

In this court, both parties have concentrated on the implications of *Zenith*. Plaintiff Glen says that the record is devoid of evidence of coercion or "conditioning," and that there was none. Not surprisingly, defendant Perfect Fit argues that the contrary inference is "inescapable." Not having the benefit of the opinion in *Zenith*, Judge Levet made no explicit findings on the issue of "conditioning" in his thorough and careful opinion. Although he did find that the patent here was not complicated and that the royalty provisions "are totally unnecessary for accounting or any other legitimate purpose," 299 F.Supp. at 286, he also stated that "no evidence of bad faith or coercion is present." Id. at 285. While we could speculate that the judge would have found "conditioning" and that the provision in question was included "at the will of the licensor,"[1] this issue was not directly focused upon at trial, and we are not sure just what the judge would have found. Accordingly, under these circumstances, we think the better practice is to remand to the district court for further findings on the issue of "conditioning" and an explicit determination of whether the license agreement amounted to patent misuse under *Zenith*.[2]

Under the circumstances, we do not find it necessary to deal with the other claims of patent misuse,[3] or with the issues raised on the cross-appeal. Case remanded for further proceedings consistent with this opinion.

---

1. 395 U.S. at 141, 89 S.Ct. at 1586 (Harlan, J., concurring in part and dissenting in part).

2. Of course, we do not preclude the district judge from taking further evidence if he sees fit to do so.

3. Perfect Fit alleged three other forms of patent misuse: that Glen required acknowledgement of validity of the patent beyond the terms of the agreement; that Glen employed discriminatory royalty practices; and that Glen charged exorbitant and oppressive royalty rates. The trial judge did not reach these issues. In the event that he determines that there was no "conditioning" in the *Zenith* sense —and we do not suggest that such a finding would be likely—it would be appropriate for him to make findings on these issues at that time.