**GLEN MFG. INC., Plaintiff,**

v.

**PERFECT FIT INDUSTRIES, INC., Defendant.**

No. 63 Civ. 3513.

United States District Court.
S. D. New York.
March 29, 1971.

Kane, Dalsimer, Kane, Sullivan & Kurucz, by David H. T. Kane, New York City, for plaintiff; William J. Stellman, James R. Sweeney, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel.

Seidel, Gonda & Goldhammer, Philadelphia, Pa., for defendant; Arthur H. Seidel, Joel S. Goldhammer, Philadelphia, Pa., of counsel.

OPINION, FINDINGS OF FACT
and CONCLUSIONS OF LAW

LEVET, District Judge.

Following a non-jury trial on liability, I previously found that plaintiff's (Glen's) licensing agreement with defendant (Perfect Fit) constituted a patent misuse because it required the payment of royalties on all toilet tank covers sold by Perfect Fit instead of those within the scope of the patent. 299 F. Supp. 278 (S.D.N.Y.1969). This finding was affirmed in a supplemental opinion, id. at 283.

From this decision of the trial court the Second Circuit Court of Appeals, citing the then newly-decided United States Supreme Court decision in Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), remanded the case to the district court "for further findings on the issue of 'conditioning' and an explicit determination of whether the license amount-

ed to patent misuse under Zenith." Glen Mfg. Inc. v. Perfect Fit Industries, Inc., 420 F.2d 319, 321 (2nd Cir. 1970).

In accordance with the direction of the Court of Appeals (id., p. 321, n. 2) this court allowed further discovery on the issue of "conditioning." On February 24, 1971, a short hearing was held at which time the parties submitted exhibits, depositions, proposed findings of fact and conclusions of law.

Consequently, the sole issue on which this court is to pass is whether or not plaintiff misused its patent by "conditioning" its licensing agreements.

The proof, as set forth herein, establishes that plaintiff misused the licensed Armstrong Patent No. 2,652,874 by conditioning the grant of licenses within the meaning of Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

Having heard the arguments of counsel and having examined the exhibits, the pleadings, the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. All findings in my original decision are incorporated herein.

2. The licensed patent involved is Armstrong Patent No. 2,652,874, issued September 22, 1953; it relates to toilet tank covers which are articles made of fabric, cut and stitched to fit around a toilet tank.

3. On the 23rd day of June, 1962, defendant entered into a license agreement with plaintiff whereby defendant was licensed to use United States Letters Patent No. 2,652,874 and Canadian Patent No. 524,616, each relating to toilet tank covers (PX 15).

4. Said license agreement contained the following clause:

"(4) PERFECT FIT and C. & H. agree to pay to GLEN a royalty of ten (10) cents on each toilet tank cover made or sold by PERFECT FIT or C. & H. after the date of this agreement, for the full term hereof, provided, however, that only one payment of royalty will be made by PERFECT FIT or C. & H. on any single toilet tank cover sold under this agreement."

5. In May, 1959, plaintiff's predecessor, Rhea Manufacturing Company, settled a suit against the Bell Textile Company for infringement of the Armstrong Patent No. 2,652,874 (Ex. P), herein in controversy. This settlement included the execution of a consent decree by the parties which stated that the patent was valid and that Bell had infringed the patent (Pl. Appendix).

6. The settlement referred to in Finding of Fact 5 also included the execution of a license agreement of the Armstrong patent whereby Bell was permitted to manufacture and sell the patented tank cover and the plaintiff obtained the sum of $4,000 and a royalty of ten cents on "each toilet tank cover made or sold by Bell * * *." (Ex. V)

7. Plaintiff interpreted the result of this Rhea-Bell agreement (Ex. V) in an intra-office memorandum from Stanley Glen to Bob Beyer, dated May 7, 1959 (copies of which were sent to Leonard Glen, Lester Glen and Alan Glen), as follows:

"Dear Bob:

"I know that you will be very happy to hear that we have settled the lawsuit on Tankettes, not only on the basis of 10¢ per Tankette cover for all that Bell will make in the future, but we also got them to agree to give us a check for $4,000 in addition.

"These are a few very significant things that are now apparent:

"1) The Court will affirm that the patent is absolutely valid.

"2) The Court will affirm that Bell did infringe.

"3) Bell will permanently be enjoined from ever infringing again.

"4) We are licensing Bell with absolutely no limitation as to what kind of tank covers they make, but any tank covers they make has to bear the 10¢ license fee.

"We are asking you to give this matter some consideration from the standpoint of now that this sword which has been hanging over our heads for four years is finally settled on a basis that we consider extremely favorable, what should we do from now on in the Tankette operation—differently possibly than we have been doing—to really capitalize on this valuable possession? * * *" (Ex. CD)

8. After the Bell litigation was settled, plaintiff adopted a business policy of predicating the granting of licenses, pertaining to toilet tank covers, upon the condition that licensees pay royalties on the basis of all the covers which they produced.

This policy is indicated in a letter from Sy Dolnick, plaintiff's sales manager, to Glenoit Mills, Inc., dated February 2, 1960 (Ex. EB). It read in pertinent part as follows:

"* * * For your information, our patent number covering the basic tank cover is 2652874. It has been our policy to grant licenses freely, but it is necessary that all licenses granted be on the same basis. The licenses now in existence require a royalty payment in the amount of ten cents for each tank cover manufactured."

9. The policy of requiring that licenses be granted on a total sales basis is further confirmed in a letter from plaintiff's attorneys to Glenoit, dated April 6, 1960, which enclosed copies of the agreement and which stated in part as follows:

"You will note the license agreement calls for a royalty of ten cents per tank cover, which is the standard rate of the Rhea license agreement." (Ex. ED)

10. In late 1960, Virginia Crafts, Inc. entered into the toilet tank cover market by the sale of a product very similar to the covers sold by plaintiff's licensees, among those being Bell Textiles. In a letter of January 13, 1961 (Ex. JA) from Bell to plaintiff, Bell demanded that plaintiff restrain Virginia Crafts' infringement by enforcing the patent against Virginia Crafts or by causing Virginia to become a licensee (Exs. JB, JE, CR, CS, CT).

11. Plaintiff thereupon charged Virginia Crafts with patent infringement and by letter offered a license to Virginia under the Armstrong patent.

This letter, dated April 5, 1961, written by James R. Sweeney, stated (in part):

"* * * They are the same terms which have been offered and accepted by numerous manufacturers in the industry, for example, Bell Textiles Co., Glenoit Mills, McCauley Enterprises, Inc., Windsor Textile and Tennessee Tufting.

"Regardless of what your new tank cover may be like, I think it is only fair to tell you that it does not look as though trouble will be avoided. * * *" (Ex. JJ)

12. In another letter to John H. Daniel of Virginia Crafts, Inc., dated April 18, 1961, Sweeney stated:

"The first alternative you already have. With my letter of April 5, I forwarded to you a copy of a license agreement which would allow you to use the invention of the Armstrong patent so long as you paid us a royalty of ten cents on all tank covers manufactured. I am enclosing with this letter the original and one copy of that license agreement.

"As a second alternative, I have cast up another agreement, the original and two copies of which I am also enclosing. This agreement specifies that in consideration for our waiving all past damages, and we are willing to make this concession in order to achieve an early and amicable settlement of our differences, you will not make tank covers such as that which we tested and reported on.

**1136**

" * * * These are the only two ways to settle our differences at this time. * * * " (Ex. JM)

Virginia Crafts was given two options: (1) submitting to an agreement to pay royalties based upon all of the tank covers it manufactured; or (2) agreeing to not manufacture the covers which allegedly infringed upon Glen's patent. Glen did not offer Virginia the opportunity to pay a royalty based upon items manufactured under the patent alone. Thus in plaintiff's negotiations with Virginia Crafts, it conditioned the granting of a license upon acceptance of a royalty based on total sales.

13. At various times commencing on or about May 6, 1959, Rhea Manufacturing Company or its successor, plaintiff Glen Mfg. Inc., entered into certain licensing agreements with the following companies:

| DATE | LICENSEE | EXHIBIT |
| --- | --- | --- |
| May 6, 1969 | Bell Textile Company | V |
| February 6, 1960 | McCauley Enterprises | Z |
| April 6, 1960 | Glenoit Mills, Inc. | Y |
| July 15, 1960 | Windsor Textile Company, Inc. | AD |
| March 21, 1961 | Tennessee Tufting Company | AC |
| May 9, 1961 | Virginia Crafts, Inc. | BB |
| January 30, 1962 | Norwood Mills, Inc. | AA |
| February 3, 1962 | Queen Chenille | AB |
| June 25, 1962 | Perfect Fit Industries | 15 |
| September 15, 1969 | Dell-Rube Chenilles Incorporated | ND |

14. In each of the following agreements, to wit, Bell Textile Company (Ex. V, par. 4); McCauley Enterprises (Ex. Z, par. 4); Glenoit Mills, Inc. (Ex. Y, par. 4); Windsor Textile Company, Inc. (Ex. AD, par. 3); Tennessee Tufting Co. (Ex. AC, par. 4); Norwood Mills, Inc. (Ex. AA, par. 4);[1] Queen Chenille, Co. (Ex. AB, par. 4), the license provided, as it did in the agreement with Perfect Fit Industries, Inc., that the licensee agree to pay to Glen a royalty of ten cents on each toilet tank cover made or sold by the licensee.

15. No license agreement produced at the original trial or at the hearing after remand revealed any contract which limited royalties to those on the patented cover; the uniformity of the use of the total sales provision induces this court to conclude that plaintiff had a definite, intentional and unvarying policy of granting licenses only if they were conditioned on this provision. Thus, it is clear that plaintiff had a consistent and unbroken policy of requiring its licensees to pay royalties on the sale of both patented and unpatented tank covers.

16. The evidence shows that plaintiff during the period between September 9, 1960 and June 25, 1962 persistently sought to induce defendant to enter into a licensing agreement. On September 9, 1960, Glen sent Perfect Fit three copies of the proposed License Agreement (letter, Ex. 5). After hearing nothing from Perfect Fit, Glen wrote a letter of inquiry on November 18, 1960 (Ex. 6).

On November 23, 1960, Perfect Fit asked for time to consider the offer (Ex. 7) and on January 23, 1961 asked for more time (Ex. 9). On June 15, 1962, a week before the agreement (Ex. 15) was signed, Glen, by Sy Dolnick, its sales manager, wrote that he was "enclosing an original and copy of the License Agreement that you requested for the manufacture of toilet tank covers" and then asked Perfect Fit to sign (Ex. E).

1. The Norwood agreement provided for payment to Glen of a royalty of ten cents on each toilet tank cover sold to Sears Roebuck and Company, Simpson Sears Ltd. or any of their subsidiaries by Norwood, its subsidiaries or any corporation controlled by Norwood or to a converter for resale to Sears Roebuck & Co., etc. (par. 4).

While this statement may appear to indicate that defendant sought the license, it is primarily self-serving to the issue involved here and may very well indicate by its verbiage an attempt to create a false impression. In general, the correspondence above referred to indicates that plaintiff was soliciting the licensing agreement.

17. Nothing in the deposition of Seymour Dolnick, Vice President of Glen, or the deposition of Harry Fishlow, President of Perfect Fit, sheds any light on the issue now presented. Plaintiff has failed to show that the License Contract involved was executed for the mutual convenience of the parties. In fact, it is clear that its purpose was for the sole monetary convenience of plaintiff. Plaintiff offered the defendant only one agreement, to wit, the standardized provision utilized in all of plaintiff's dealings which required a royalty to be paid on unpatented as well as patented articles.

18. As heretofore stated by this court, "Toilet tank covers are extraordinarily simple." Glen v. Perfect Fit, 299 F.Supp. 278, 287 (S.D.N.Y.1969). No evidence has been presented to demonstrate that a total sales royalty arrangement was a necessary convenience for mutual benefit of plaintiff and any of its licensees.

## DISCUSSION

### I.

■ Conditioning the grant of a patent license upon the payment of royalties based upon the manufacture of products which do not use the patent in their production constitutes a patent misuse. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 135, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

### II.

■ If the reason for employing a royalty provision which is based on total sales is the mutual convenience of both of the parties rather than as leverage from which a licensor can extract payment for the manufacture of unpatented items, there is no patent misuse.

### III.

■ Plaintiff's wrongful acts of conditioning licenses to other toilet tank cover manufacturers bar plaintiff's enforcement of its contract against this defendant. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 493, 62 S.Ct. 402, 86 L.Ed. 363.

## CONCLUSIONS OF LAW

1. Plaintiff has "conditioned" the granting of patent licenses to defendant within the meaning of Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

2. Plaintiff conditioned the granting of patent licenses to Virginia Crafts, Inc., Bell Textile Company, Glenoit Mills, Inc. and others in the period between May 6, 1959 and June 25, 1962 by a firm policy of refusing to grant licenses unless such licenses contained a provision requiring royalties to be paid on the total sales of toilet tank covers, including those not covered by the licensed Armstrong patent.

3. These license agreements unreasonably lessened competition in the toilet tank cover industry.

4. The royalty structure so adopted was unnecessary and was for the sole benefit of plaintiff rather than for the mutual convenience of licensor and the licensees.

5. Such actions by plaintiff constitute patent misuse and hence the agreement is illegal, invalid and unenforceable.

6. Defendant is entitled to judgment dismissing the complaint together with costs and disbursements.

Settle judgment on notice.