588 F.2d 872
 In re HARTFORD TEXTILE CORPORATION, Oxford Chemicals, Inc.,
Wellington Print
Works, Inc., Debtors. Rose SHUFFMAN, as Executrix of the
Estate of Oscar Shuffman, Appellant,
v.
HARTFORD TEXTILE CORPORATION, Oxford Chemicals, Inc.,
Wellington Print Works, Inc., Appellees.
 Nos. 36, 92, 114, 294, Dockets 78-5024, 5032, 5036, 5045.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1978.
Decided Dec. 6, 1978.
 
 David K. Shuffman, New York City, for appellant.
 Bruce R. Zirinsky, New York City (Brad Eric Scheler, Weil, Gotshal & Manges, New York City, of counsel), for debtors-appellees.
 Before SMITH, TIMBERS and VAN GRAAFEILAND, Circuit Judges.
 PER CURIAM:
 
 
 1
 These consolidated appeals arise from a Chapter XI bankruptcy proceeding in which appellant's claim for $80,000 in unpaid commissions was denied. Appellant is the executrix of the estate of Oscar Shuffman who, prior to the filing of the Chapter XI petition, had entered into a commission contract with Hartford Textile Corporation, the debtor-in-possession. The contract provided that Shuffman was to receive a finder's fee of one cent per pound on all vinyl delivered to Hartford under a separate contract between Hartford and Rudd Plastic Fabrics Corporation. The contract between Hartford and Rudd called for periodic shipments of an eventual total of ten million pounds of vinyl. Before Hartford encountered the financial difficulties that forced it into Chapter XI, Rudd made deliveries under the contract, and Hartford paid commissions to Shuffman based on the amounts delivered.
 
 
 2
 As financial problems beset Hartford, it fell behind in its payments to Rudd for goods received. Approximately two weeks before Hartford filed its Chapter XI petition, Rudd notified Hartford that, because of Hartford's delinquencies, it was cancelling the supply contract. Shortly after Hartford filed its petition, Hartford and Rudd entered into compromise negotiations to which Shuffman was not made a party. The compromise agreement, which was submitted to the bankruptcy court for approval, called for delivery of approximately 1.2 million pounds of vinyl at an increase in price. It was approved by the court without prior notice to Shuffman, who had not yet filed a claim against the debtor.
 
 
 3
 Shuffman's claim, when filed, was for approximately $80,000, based on services rendered prior to the filing of the petition. However, Shuffman conceded during the bankruptcy hearing that he had been paid commissions on all deliveries made to Hartford before the filing.[1] Accordingly, his claim for $80,000 could be justified only if commissions were payable on the full ten million pounds of vinyl regardless of whether all of it was delivered. The bankruptcy court interpreted Shuffman's agreement with Hartford to entitle Shuffman to commissions only on goods actually received and accepted by Hartford. We agree. The agreement is unambiguous and permits no other interpretation. See Glen Manufacturing, Inc. v. Perfect Fit Industries, Inc., 299 F.Supp. 278, 281 (S.D.N.Y.1969), Remanded on other grounds, 420 F.2d 319 (2d Cir.), Cert. denied, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970). To the extent that Shuffman's claim sought commissions on the entire ten million pounds of vinyl, whether delivered or not, it was without merit.
 
 
 4
 Appellant contends that the compromise agreement was not a new agreement but was merely a modification of the old one. From this she argues that she is entitled to commissions on all deliveries, up to ten million pounds, made by Rudd to Hartford since the original contract was executed, including deliveries made after the petition was filed. This argument also is without merit. The bankruptcy court found that the original contract between Hartford and Rudd had been cancelled, and this finding has support in the record.[2] Appellant asserts that the bankruptcy court's finding of cancellation contradicted certain "stipulated and agreed facts." The "stipulation" to which appellant refers is the preliminary language in the Hartford-Rudd settlement agreement which reads "Whereas Hartford and Rudd are parties to (the prior agreement)" and which then preserves, in the event of a breach of the settlement agreement, the rights and duties of Hartford and Rudd under the prior agreement. The settlement agreement also provides that "either party shall be free to pursue any remedy at law or in equity on account of any liability or breach of duty arising prior to the effective date of this agreement."
 
 
 5
 Appellant misunderstands the purpose and legal effect of this language. It was not designed to, and did not, serve as an acknowledgment of the continued existence of the original contract, binding the bankruptcy court to find the original contract still in force. Language such as this is common to settlement agreements; it served merely to preserve for possible future lawsuits the right of Hartford and Rudd to claim a breach by the other of the admittedly terminated contract. The bankruptcy court did not, therefore, contradict any stipulated facts when it found that the original Hartford-Rudd agreement had been cancelled.
 
 
 6
 Appellant's contention that certain payments made to Shuffman by Hartford during the period of arrangement constituted an "affirmance" of his original commission contract also is unfounded. Shuffman's agreement with Hartford was tied to the original contract between Hartford and Rudd, and his right to commissions was contingent upon deliveries to Hartford under the terms of that contract. After the basic sales contract was terminated, "affirmance" of Shuffman's right to receive commissions thereunder would have been meaningless. Although the bankruptcy court found initially that there was no post-petition commission agreement between Hartford and Shuffman, it later made an amended finding that there was such an agreement. It based this finding on post-petition checks Hartford made out to Shuffman marked "prepayment against new Rudd contract" and on Hartford's acquiescence in the court's proposed decision to hold it liable for commissions for deliveries under the new Rudd contract. In view of the fact that the original Hartford-Rudd contract had been cancelled, the bankruptcy court's finding that an agreement had been reached to pay commissions for deliveries made under the settlement agreement did not prejudice appellant. It entitled her instead to an additional $3,346.71 in commissions.
 
 
 7
 Equally unfounded is appellant's contention that the bankruptcy judge erred in denying priority status to her claim for commissions as an administration expense. The record establishes that appellant has received payment in full on all deliveries made by Rudd to Hartford during the period of arrangement. If appellant believes that she has not received commissions due her on deliveries made thereafter, her remedy lies not in the bankruptcy court nor on this appeal, but in a plenary action at law. See In re Gordon, 44 F.Supp. 581 (S.D.N.Y.1942); 9 Collier on Bankruptcy PP 8.11, 8.12 (14th ed. 1975).
 
 
 8
 When Shuffman filed his claim, Hartford filed an objection to it. The objection was withdrawn during settlement negotiations that followed. When these fell through and Shuffman died, Hartford applied to the court for restoration of its objection. Appellant asserts that the bankruptcy court erred in conducting a hearing on the objection promptly after it was restored. Appellant was not prejudiced by this exercise of the court's discretion. Shuffman had been on notice of the grounds for the objection from the time it was filed, more than two years before. Moreover, the claim objected to was based on the original commission contract between Hartford and Shuffman, and the interpretation of that unambiguous agreement was essentially a matter of law. See National Utility Service, Inc. v. Whirlpool Corp., 325 F.2d 779, 781 (2d Cir. 1963). Hartford's comptroller testified at the hearing as to the quantity of pre-petition deliveries reflected in Hartford's books and records, and appellant's counsel subjected him to a thorough cross-examination. Appellant had ample opportunity at the hearing and in her memoranda to present her case to the court, both as to the meaning of the contract and as to the amount of vinyl actually delivered. Again we note appellant's concession that commissions have been paid on all pre-petition deliveries. We do not believe that the court abused its discretion by refusing to adjourn still another time a case that had been on its docket for more than three years.
 
 
 9
 On February 22, 1978, the orders of the bankruptcy judge relating to appellant's claim were affirmed by Judge Brieant of the United States District Court for the Southern District of New York. On March 6, 1978, appellant moved for reargument, the motion being returnable before Judge Brieant on March 28, 1978. On March 23, 1978, appellant filed a notice of appeal to this Court from the order on which she was seeking reargument. Judge Brieant, who was unaware of the appeal, heard oral argument and reserved decision on the reargument motion. On learning of the appeal, Judge Brieant on April 17, 1978, vacated his determination to hear reargument and denied the motion without prejudice to such proceedings on appeal as the parties might deem appropriate. Appellant has appealed from that order.
 
 
 10
 While the two appeals were pending, appellant moved in this Court for an order remanding the matter to the district court. This application was denied "without prejudice to apply to Judge Brieant for whatever relief is appropriate." Appellant then moved again in the district court for rehearing and reargument, and this motion was denied on June 9, 1978. A third motion for rehearing and reargument was denied on July 13, 1978. At the same time, the district judge denied appellant's application for an order disqualifying the bankruptcy judge and the debtor's attorneys and directing the appointment of a special prosecutor. Appellant has appealed from these orders. All four of appellant's appeals are before us now.
 
 
 11
 With respect to the appeal on the merits from Judge Brieant's order of February 22, 1978, we conclude, despite the voluminous and vitriolic protestations of appellant's counsel,[3] that appellant's rights in the Chapter XI proceeding were recognized and protected; and the order appealed from is affirmed. Because an order denying reargument is generally not appealable, See In re Brendan Reilly Associates, Inc., 372 F.2d 235, 238 (2d Cir. 1967), and the issues herein are being disposed of on the merits, the appeals from Judge Brieant's orders denying reargument are dismissed. The remainder of Judge Brieant's order of July 13, 1978, is affirmed.
 
 
 
 [1]
 At the time the petition was filed, Hartford owed commissions to Shuffman in the amount of $1,032.69. Six hundred dollars of that amount was paid to Shuffman pursuant to § 64a(2) of the Bankruptcy Act, 11 U.S.C. § 104(a)(2). The remaining $432.69 became a general unsecured debt
 
 
 [2]
 The bankruptcy judge found erroneously that the agreement between Hartford and Rudd was cancelled after the filing of the Chapter XI petition. However, the parties agree that notice of cancellation was given prior to the filing. When this fact was called to the attention of the bankruptcy judge, he held that it did not change the result he had reached
 
 
 [3]
 Appellant's counsel has filed at least twenty-five motions in the course of these proceedings. Many were meritless and many repetitive. As a result, the costs of the proceedings have been increased so unreasonably and vexatiously as to warrant consideration by this Court of an order requiring the attorney to satisfy personally the excess costs. See 28 U.S.C. § 1927. We refrain from issuing such an order at this time only because counsel is a young man representing his widowed mother. In so doing, we in no way condone the course of conduct that counsel has pursued in this matter