The **PLASTIC CONTACT LENS COM-PANY**, Plaintiff,

v.

**W. R. S. CONTACT LENS LABORA-TORIES, INC., et al., Defendants.**

No. 63 Civ. 1609.

United States District Court,
S. D. New York.

July 17, 1970.

Karpatkin, Ohrenstein & Karpatkin, by M. M. Karpatkin and Michael Pollet, New York City, for plaintiff.

Bader & Bader, by I. Walton Bader, New York City, for defendants.

*Findings of Fact and Conclusions of Law*

MOTLEY, District Judge.

I.  *Findings of Fact*

1. Plaintiff, The Plastic Contact Lens Company (hereinafter "PCL") is an Illinois corporation engaged in the manufacture and sale of contact lenses and optical equipment.

2. Defendant, W.R.S. Contact Lens Laboratories, Inc. (hereinafter "W.R.S."), at the time of the institution of this action, was a New York corporation engaged in the manufacture and sale of contact lenses.

3. Defendant, Ocular Products, Inc. (hereinafter "Ocular"), at the time of the institution of this action, was a New York corporation engaged in the manufacture and sale of contact lenses.

4. Prior to the effective dates of the license agreements hereinafter set forth, and up until April 12, 1961, Solex Laboratories, Inc. (hereinafter "Solex" was the owner of the Tuohy patent, United States Patent No. 2,510,438 for corneal contact lenses.

5. On or about April 12, 1961, Solex assigned to plaintiff all of its rights, title and interest in and to the Tuohy patent, including its rights as licensor under certain nonexclusive patent license agreements.

6. Plaintiff has succeeded to all rights which Solex previously had with respect to the Tuohy patent and to all of licensor's rights under Solex's nonexclusive patent license agreements.

7. A portion of the business of plaintiff and its predecessor Solex consisted of licensing of rights under the Tuohy patent to other manufacturers pursuant to nonexclusive patent license agreements.

8. The defendants, W.R.S. and Ocular, were, until the expiration of the Tuohy patent on June 6, 1967, licensees of plaintiff pursuant to such nonexclusive patent license agreements.

9. The license agreement with the defendant, W.R.S. was executed on behalf of both licensor and licensee on or about March 22, 1961. The license agreement with the defendant Ocular was executed in behalf of both licensor and licensee on or about March 16, 1961.

10. Paragraph 2(a) of each of the license agreements reads as follows:

"LICENSEE, solely for the purpose of accounting hereunder, agrees to pay to SOLEX royalties upon such devices consisting of pieces of finished material in which two lens surfaces are applied thereto and which are adapted to be or are made into a finished or unfinished corneal contact lens calculated in accordance with the following schedule on all such devices sold by LICENSEE:

"$1.00 on each pair of the first 150,000 pairs of devices or $.50 per device.

"$.75 on each part of the next 100,-000 pairs of devices or $.375 per device.

"$.50 on each pair of the next 100,-000 pairs of devices or $.25 per device.

"$.25 on each pair of all additional pairs of devices or $.125 per device.

"LICENSEE shall not pay royalties to SOLEX on finished or unfinished lenses (i. e., lenses upon which two lens surfaces are already formed) when purchased from SOLEX or from a licensee of SOLEX, and such lenses shall not be counted in the total number of devices sold by LICENSEE under the schedule hereinabove."

11. Paragraphs 2(b) and 2(a) of each such license agreement further define the lens devices on which royalties are payable, and specify the lens devices on which royalties are not payable.

12. Paragraph 6 of each such license agreement contains the following no-contest clause:

"The LICENSEE agrees to refrain from either directly or indirectly attacking the validity of said Letters Patent licensed under this agreement during the term of this agreement."

13. Each defendant was represented by counsel at the time the license agreement was entered into, and entered into the license agreement freely, voluntarily and with full understanding of the terms thereof, and without any fraud, misrepresentation or duress (physical, economic or otherwise) by plaintiff in the inducement.

14. It was fully understood by defendants at the time of the entry into the license agreements that the license agreements provided for the renderings of accountings and payment of royalties on all corneal contact lenses manufactured and sold. It was likewise understood that the Tuohy patent was not the only patent dealing with corneal contact lenses.

15. Neither defendant has rendered accountings or paid royalties pursuant to its license agreements, except as follows:

a. The last accounting and payment by defendant W.R.S. covered the month of September, 1961; and

b. The last accounting and royalty payment by the defendant OCULAR

covered the month of December, 1961. Royalties amounting to $1,106.50 were paid by defendant W.R.S. and royalties amounting to $519.50 were paid by defendant OCULAR.

16. When this action was called for trial the parties entered into a stipulation dated April 22, 1970, pursuant to which it was agreed that the defendants would move for summary judgment on the sole question of the validity of the license agreements under the doctrine of Zenith Radio Corporation v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). On May 7, 1970 this Court denied the defendant's motion for summary judgment holding that the license agreements here were not invalid *per se* because they called for royalties on all contact lenses manufactured rather than solely on lenses manufactured pursuant to the Tuohy patent. It was further held by the Court that the defendants were required to introduce evidence of coercion or conditioning—a posture on the part of the plaintiff which rejected alternative proposals by the defendants—in order to establish patent misuse.

17. At the trial, the evidence introduced by the defendants was limited to the defense of patent misuse under Zenith Radio Corporation v. Hazeltine Research, Inc., *supra*, and to their claims of the invalidity of the Tuohy patent and alleged anti-trust violations by the plaintiff.

18. The record is devoid of any credible evidence that the plaintiff conditioned the grant of the patent license to the defendants upon payment of royalties on unpatented products. The testimony of Harry Sage, Esq. establishes that the plaintiff offered alternative license agreements, one calling for royalties only on lenses covered by the Tuohy patent and the other (the license agreement herein) calling for royalties at a lower rate but covering all lenses manufactured by the licensees. The Court finds that the license agreements were bargained for and that the plain-

tiff did not override the defendants' protestations to the license agreements.

19. The defendants abandoned their claim that they were excused from performance of their license agreements because the plaintiff violated paragraph 8 of the license agreement, commonly referred to in the trade as the "most favored nation" clause.

20. The defendants wholly failed to carry their burden of proving by a fair preponderance of the credible evidence that the Tuohy patent was invalid. There was no expert testimony of any kind offered by defendants on the issue of invalidity and, consequently, no basis was provided in the record for a finding by this court that the patent is invalid under the tests laid down in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Defendants' sole position was that since the Patent Office overlooked certain prior art, the patent in suit is invalid. There was not even any attempt made to point out any similarities between the prior art and the Tuohy patent.

21. No evidence at all was introduced by the defendants of any violations of the anti-trust laws by the plaintiff.

## II. *Conclusions of Law*

1. The defendant-licensee, W.R.S. and the defendant-licensee, Ocular, each violated the accounting and royalty provisions of their respective license agreements.

2. Each such defendant likewise violated the no-contest covenant of the respective license agreements, but that covenant does not estop defendants from challenging the patent's validity. Lear v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

3. The license agreements are valid. The defendants' claim that the license agreements constitute patent misuse because they call for royalties based on total sales rather than on patent use is rejected because of the absence of any credible proof that the plaintiff conditioned the grant of the licenses upon pay-

ment of royalties on total sales. Since there is no credible proof that the plaintiff refused to license on any other basis, the license agreements are valid. Zenith Radio Corp. v. Hazeltine Research, Inc., *supra*; Glen Mfg. Inc. v. Perfect Fit Industries, Inc., 420 F.2d 319 (2d Cir. Jan. 13, 1970).

■■■■ 4. The court finds no basis upon this record for finding the Tuohy patent invalid.

5. There is likewise no basis in this record for finding any anti-trust violations.

6. By reason of the foregoing, plaintiff is entitled to judgment for an accounting and royalties based upon each defendant's total production and sales, as may be due under the license agreement, until the date of expiration of the Tuohy patent.

7. Plaintiff is likewise entitled to judgment dismissing all of the counterclaims.

8. The parties herein will confer within ten days from the date of entry of an order herein by the court in an attempt to agree upon the number of contact lenses manufactured by said defendants and the royalties to be paid by said defendants. In the absence of an agreement within said period, this matter will be referred to a Special Master to be appointed by this court. The fees of said Special Master will be initially paid by the plaintiff but will constitute taxable costs to the defendants and said fees will be added to the final judgment herein entered.

9. Plaintiff is entitled to costs (pursuant to 28 U.S.C. § 1920, 28 U.S.C. § 1927 and 35 U.S.C. § 284). The request for attorney's fees is denied.

10. Plaintiff's counsel are directed to prepare and submit an appropriate order in accordance herewith.